THE DENVER TRAMWAY COMPANY v. NESBIT.

1. EMPLOYER AND EMPLOYÉ.

An employer is under no implied obligation to furnish any particular kind of machinery or to adopt the latest improvements or appliances. He is only bound to see that that which he does employ is reasonably safe and suitable for the purpose for which it is designed.

2. SAME.

Generally, an employé accepts the service subject to all the risks naturally and reasonably incident to the employment, and those arising from defects or imperfections in the thing about which he is employed which are open and obvious or discoverable by him by the exercise of ordinary diligence.

3. SAME.

By voluntarily continuing in the service with knowledge, or means of knowledge equal to his employer's, of any defect in the appliances or the machinery used, and without objection, or promise on the

part of the employer to remedy the defect, the employé assumes all the consequences that result from such defect, and waives the right to recover for injuries caused thereby.

*Appeal from the District Court of Arapahoe County.*

ACTION to recover damages for personal injuries caused by defendant's negligence.

On September 24, 1890, the plaintiff, William J. Nesbit, was employed by The Denver Tramway Company in the capacity of conductor on its street cars. On October 17, 1890, in the morning, he took charge of a train consisting of a motor and trail car, and was engaged in operating the same upon the company's Lawrence street line. On the third trip, while the train was going at a speed of from twelve to fourteen miles an hour, in attempting to pass from the motor to the trail car, he fell to the ground, and the hind wheel of the trailer passed over his foot and ankle, causing serious and permanent injuries. Nesbit's statement as to how the accident occurred is undisputed, and is as follows:

"I was passing from the motor to the trailer in order to collect a fare or fares, and I had hold with my right hand of the hand rail of the motor car, and I swung around in the usual way to catch hold of the hand rail of the trailer car and thus transfer my hold. I came in contact with the hand rail of the trailer car, and thought I had it for the instant, but just as I was transferring my hold the motor gave a sudden bound up and threw my hand so high I missed the trailer and fell."

The negligence charged against the company, and which it is claimed by plaintiff was the proximate cause of the injury, was the failure to have what is termed a "life guard," or "fender," on the trail car, which extends around from the front to the rear, from six to nine inches outside the wheels, and so near the ground as to prevent a person's foot from passing under and onto the track. Upon the conclusion of the testimony, defendant asked the court to instruct the jury to find for defendant, which was denied; motion for new

trial denied and judgment entered on this verdict, from which the company appeals.

Messrs. BROWN & SMITH and Mr. A. M. STEVENSON for appellant.

Messrs. THOMAS, BRYANT & LEE, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

From the undisputed facts in this case it appears that the appellee was engaged as conductor in operating a train of cars on appellant's street railway, and while the train was in rapid motion attempted to step from the rear of the motor to the trail car, and, by reason of the sudden bobbing up of the motor at the time, missed the hand rail on the trailer and fell in such a way as to bring his foot and ankle under the rear wheel of the trailer. There was no fender or life guard on the trailer, and the company, at the time, was using trail cars both with and without the guard, and its absence or presence was open to observation and easily discernible by the most casual inspection. Upon these conceded facts, we think it was the duty of the trial court to have withdrawn the case from the consideration of the jury and have determined, as a matter of law, that they were insufficient to show liability on the part of the company.

Aside from the question whether the conduct of the appellee in attempting to pass from the motor to the trail car while the train was running at a rapid rate of speed, and his fall under the circumstances, was not the proximate cause of the injury, there are apparent other and controlling reasons which exempt the company from liability. Its failure to place a guard upon the trail car cannot be said to constitute negligence *per se*, and whatever weight may be given to such failure as a factor conducing to the injury of a stranger, it certainly constituted no breach of duty on the part of the company towards its employés to operate its cars without

such guard. In other words, an employer is under no implied obligation, by the contract of employment, to furnish any particular kind of machinery or to adopt the latest improvements and appliances. He is only bound to see that that which he does employ is reasonably safe and suitable for the purpose for which it is designed. Wood on Master & Servant, 690; *C. B. & Q. Ry. Co. v. Smith*, 18 Brad. 119; *L. S. & M. S. Ry. Co. v. McCormick*, 74 Ind. 440; *Ft. Wayne Ry. Co. v. Gildersleeve*, 33 Mich. 133.

While the want of a life guard may have enhanced the risk incident to appellee's employment, it did not constitute such a defect in the construction of the car as to render it unsafe or unsuitable for the business in which it was employed. As was said in *Sweeney v. Berlin & Jones Envelope Co.*, 101 N. Y. 520:

"In the absence of defective construction, or of negligence or want of care in the reparation of machinery furnished by him, the master incurs no liability from injuries arising from its use. The general rule is that the servant accepts the service subject to the risks incidental to it; and where the machinery and implements of the employer's business are at the time of a certain kind, and the servant knows it, he can make no claim upon the master to furnish other or different safeguards."

But, even conceding that the want of a life guard rendered the car defective and the company was guilty of a breach of its duty in failing to supply it and in operating the train without it, such defect was certainly obvious, and one that the appellee could not have failed to observe if he had used his eyesight, and one that was as open and patent to him as to the company; and if danger was to be apprehended from the use of a car in that condition, that result was equally apparent to him.

Under these circumstances he was precluded from recovering, by the well settled rule that an employé assumes all the risks naturally and reasonably incident to the service in which he engages, and those arising from defects or imper-

fections in the thing about which he is employed that are open and obvious, or that would have been known to him had he exercised ordinary diligence. By voluntarily continuing in the service with knowledge, or means of knowledge equal to his employer's, of any defect in the appliances or the machinery used, and without objection, or promise on the part of the employer to remedy the defect, the employé assumes all the consequences that result from such defect, and waives the right to recover for injuries caused thereby. *Rogers v. Galveston City Ry. Co.*, 76 Texas, 502; *Texas & Pac. Ry. Co. v. Bradford*, 66 Texas, 732; *The Jenney Electric Light & Power Co. v. Murphy*, 115 Ind. 566; *Sullivan v. India Mfg. Co.*, 113 Mass. 396; *Quick v. Minn. Iron Co.*, 47 Minn. 361; *Brewer v. F. & P. M. Ry.*, 56 Mich. 620; *Moulton v. Gage*, 138 Mass. 390; *Ind. B. & W. Ry. Co. v. Flannigan*, 77 Ill. 365; *Ladd v. New Bedford Ry. Co.*, 119 Mass. 412; Wharton's Law of Negligence, sec. 214, and cases cited; *Wells v. Coe*, 9 Colo. 159.

Applying this rule to the facts of this case, it is clear that appellee was not entitled to recover, and the court below erred in refusing to direct a verdict for defendant. The judgment is reversed and cause remanded.

*Reversed.*