[No. 4404.]

The Iowa Gold Mining Company v. Diefenthaler.

1. **Appellate Practice—Bill of Exceptions.**

Where the order of court fixing the time within which a bill of exceptions should be tendered to the trial court, provided that

it should be presented to opposing counsel for inspection at least ten days before that time, the fact that the bill was not presented to opposing counsel ten days prior to the expiration of the time, was not grounds for striking out the bill of exceptions where the trial court found that opposing counsel had been afforded reasonable opportunity to inspect the bill.

**2. Negligence—Master and Servant—Assumed Risk.**

An employee assumes the risks arising from imperfections in the appliances under his control, which he uses in connection with his employment, that are open and visible and the defects therein which he might have known by ordinary care, when, without objection on his part, or promise by his employer to remedy such defective appliances, he continues in the service for which he was engaged.

**3. Same.**

Where plaintiff, an experienced workman, was employed in defendant's ore-concentrating mill to operate a tram on which buckets of concentrates were moved from one part of the mill to another by means of switches connecting with the main tram, which switches were simple devices operated by hand, and in performing his duties plaintiff could not have failed to observe that one of these switches had no flange on the inner side such as was used on other switches in the mill, and which formed an additional safeguard in preventing the switch from slipping when closed, and plaintiff made no objection to using such switch and voluntarily continued work without any promise from defendant to remedy the defect, plaintiff assumed the risk arising from such defective switch and cannot recover for an injury caused by said defective switch slipping and letting fall upon plaintiff a loaded bucket.

**4. Same—Pleading.**

In an action by an employee against his employer for injury caused by defendant's alleged negligence, where plaintiff's evidence discloses that he assumed the risk which resulted in his injury, defendant is entitled to have a verdict directed in its favor, notwithstanding such defense was not pleaded.

*Appeal from the District Court of San Juan County.*

Messrs. Thomas, Bryant & Lee, for appellant.

Mr. Chas. A. Johnson, Mr. T. B. Stuart and Mr. Chas. A. Murray, for appellee.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

When the bill of exceptions was first lodged in this court, the appellee moved to strike it from the files. The motion was denied, because the ground upon which it was based, in so far as it was sought to attack the correctness of the bill, could not be established in the manner attempted. Leave was granted the appellee to withdraw the bill for the purpose of amendment. It was withdrawn for this purpose. Amendments were allowed by the trial judge, and the bill returned. The result is, that in some particulars the record is confused, but on the vital question in the case it is clear. Before proceeding, however, to a discussion of the cause upon its merits, there remains one question raised by the motion to strike to dispose of.

The order fixing the time within which the bill of exceptions was to be tendered the trial judge for signature, provided that it should be presented to counsel for appellee for inspection at least ten days before the expiration of that time. It was not placed in the hands of such counsel until seven or eight days before the day that it was to be tendered the trial judge. In support of the motion to strike, it is urged that the judge could not waive the provision of the order with respect to the time the bill was to be handed counsel for appellee for inspection. The purpose of the order was to afford counsel for appellee an opportunity to examine the bill. This part of the order was in no manner jurisdictional. It did not deprive the judge of power to sign the bill, even if not strictly complied with, if he was satisfied that counsel for appellee had been afforded the opportunity which was its purpose. When the bill was presented to the judge, objection was made

to its being signed, because of the failure to comply with that part of the order under consideration. In passing upon this proposition the trial judge found that counsel for appellant had afforded counsel for appellee all reasonable opportunity to examine the bill before it was presented to him for signature. It thus appears that the order was substantially complied with, and its purpose accomplished. The motion to strike must, therefore, be denied.

The action was commenced by appellee to recover from appellant damages for injuries sustained by the alleged negligence of the latter. The trial resulted in a verdict and judgment for the plaintiff, from which the defendant appeals. At the close of the testimony for plaintiff, the defendant moved for a peremptory instruction, directing the jury to return a verdict in its favor. Among other grounds assigned in support of this motion, was one to the effect that the injury was the result of one of the hazards which plaintiff assumed. This motion was denied. In order to properly discuss this question, a brief resume of the testimony of plaintiff becomes necessary.

He was employed in a mill operated by the defendant. One of his duties was to move concentrates from one part of the mill to another. This was effected by means of buckets suspended on wheels resting on a rail or rigid tram, attached to a frame about six and a half feet from the floor. Side trams similarly constructed were connected with the main tram at points where it curved sharply, so that the buckets could be moved to and from various parts of the mill. The connection between each side tram and the main one was effected by means of a switch. This switch was constructed of the same material as the tram, and worked laterally on a hinge, or pivot, attached to the side tram, and was so arranged as

to permit of a slight vertical movement. The other end of the switch, when closed, rested on and along the main tram so that a continuous track was formed by the connection thus made. Plaintiff was engaged in operating one of the buckets, and in so doing, it was his duty to close the switch connecting the side tram over which he moved the bucket under his control. Just prior to his injury, he had returned with an empty bucket, and in order to divert it from the main tram to the branch leading to the place where it was loaded, closed the switch. Shortly after he started back with a loaded bucket, but the switch was not then in place, or the connection had in some way been broken, and as the end which should have rested upon the main tram was not supported, the switch was broken at the pivot and the bucket fell, breaking his leg. This particular switch was grooved on the under side, so as to fit closely on the main tram and prevent its slipping off. Other switches in the mill had a flange on the inner side, which was an additional safeguard against slipping when closed. Plaintiff knew of these switches, and in performing his work had occasion to use them more or less. Each switch was worked by hand. On returning with the loaded bucket he made no examination of the switch. At the time of his injury he was twenty-six years of age. Previous to his employment by the defendant he had worked in another mill in the near vicinity for the period of about eight months, where he had used a system of trams and switches similar in structure to those in the mill of defendant. He had been in the employ of defendant about three months, and for the period of something like two weeks before his injury had been engaged in operating buckets over the tram, making from ten to twenty-five trips a day. His claim for damages is based upon the ground that his injury was caused by the negligence

of the defendant in failing to furnish a reasonably safe switch, in that the groove was not sufficient to hold it in place. It does not appear that he ever made any complaint concerning this switch, or that any promises were made to him that its alleged defects would be remedied. There was testimony tending to prove that a switch without a flange could be jarred from the main track.

The switch in question was not a complicated piece of machinery; in fact, it was a very simple device. It was the duty of the plaintiff to operate it. In doing so he could not fail to observe its alleged defects. There was no concealed danger about its use. The consequences which would result from running a loaded bucket upon it when not connected with the main track were apparent to any person of ordinary intelligence. If, as claimed, the groove was not sufficient to hold it in place, that was a defect in its construction which must have occurred to any one with the experience in operating a switch of that character which the plaintiff had. In opening and closing it he could readily see how it was constructed; he knew that other switches which he had occasion to use were supplied with a flange on the inner side, which made the connection more secure when a switch thus equipped was closed. The closing of the switch in question was entirely within his own control. If defective, he must have known that fact, or by the exercise of the most ordinary care should have known it. He made no objection to its use, nor was any promise made on the part of the defendant to remedy the alleged defect. It thus appears that plaintiff voluntarily continued in the service of the defendant with knowledge, or means of knowledge, equal to it, respecting the alleged defects in the switch entirely under his control, without objection on his part, or promise by the defendant

to remedy such defect. In such circumstances he did not make out a case to submit to the jury. An employee assumes the risks arising from imperfections in the appliances under his control which he uses in connection with his employment that are open and visible, and the defects therein which he might have known by the exercise of ordinary care, when, without objection on his part or promise by his employer to remedy such alleged defective appliances, he continues in the service for which he was engaged.—*Denver Tramway Co. v. Nesbit,* 22 Colo. 408; *The Jersey Electric L. & P. Co. v. Murphy,* 115 Ind. 566; *Rogers v. Galveston City Ry. Co.,* 76 Tex. 502.

The motion of defendant for a verdict in its favor should have been sustained.

Counsel for plaintiff contend that assumption of risk is an affirmative issue that must be specially pleaded. This would be an important question in case the defendant had attempted to establish a state of facts from which it appeared that the injury sustained by the plaintiff was the result of an assumed risk on his part; but where, as in this instance, the testimony on the part of the plaintiff discloses that he assumed the risk which resulted in his injury, the question of the character of the defense interposed by the defendant is not involved.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

STEELE, J., not sitting.