Gunter, J.
Appellee sued appellants on account of personal injuries sustained by Mm through the alleged negligence of appellants, and recovered a verdict in the sum of $525.00. The trial court, without assigning any reason for its action in so doing, so far as the record discloses, required appellee, as its condition for overruling a motion of appellants for a new trial, to enter a remittitur for $275.00, and on his doing so, entered judgment for appellee for the amount of $250.00. From such judgment is this appeal. The facts were: Appellants were constructing, of iron plates, a large water tank at Goldfield, this state; they employed appellee, a boiler maker of sis years’ experience as such, and 28 years of age, to work as a riveter in the erection of the tank. Appellee had had experience in riveting, knowledge of which is within the trade of a boiler maker. A scaffold was erected by appellants for use in riveting the tank. The scaffold was a simple appliance built at the tank by two men in about one hour. It was made thus: A platform of such lumber as is ordinarily used for such purposes, 3 feet, 6 inches in width by about 4 feet in *308 length was built upon scantlings bolted at right angles to the lower ends of two pieces of timber 7 feet in length, 2 inches in thickness and 6 inches in width. A second platform similarly constructed and secured to uprights was also made. These platforms were connected by iron hangers made in the form of ordinary shears, to which hangers the upper ends of the uprights sustaining the platforms were bolted. The scaffold was then suspended by the hangers resting on the upper edge of the tank. Appellee saw the scaffold constructed and aided in placing it on the tank — one platform of the scaffold hung on the inside of the tank, the other on the outside. Appellee and another workman occupied the inside platform and hammered the rivets, while a third workman on the outer platform held a hammer to the heads of the rivets. It became necessary to move the scaffold around the edge of the tank as the riveting progressed. This shifting of the platform was done by appellee and his fellow workmen. Appellee and his .two- fellow laborers worked upon the scaffold as originally constructed about one week. At times only one riveter could work on appellee’s side, at such times the other stood by unengaged. Appellee had ample opportunity to inspect the materials of which the scaffold was constructed, and the manner of its construction, and to judge of its weight. The part of the upright bolted to the hanger, which subsequently split and caused the fall of the scaffold, was immediately before him and in plain view. ' When the work had progressed to the riveting of the angle iron, which is around the upper edge of the tank, second story platforms were built on the inner and outer sides of the scaffold. This was for the purpose of enabling the workmen to reach the rivets on the angle iron. Appellee and the workmen with him on the platforms aided in building the second story *309 additions to the scaffold. Appellee must have assisted in handling the materials which went into the platforms, and from common knowledge knew approximately their weight. He more than once assisted in moving and lifting the scaffold in its progress around the angle iron. Until the hangers rested on the angle iron little difficulty was experienced in moving the scaffold, which was done by the workmen sitting astride the upper edge of the tank, lifting the scaffold slightly and moving it on. After the scaffold rested on the angle irons there was more difficulty in moving it, due largely to the width of the angle iron which prevented the ready moving of the hangers. To widen the curve of the hangers for the purpose of more easily moving them along, and thereby moving the scaffold, appellee and his fellow workmen hammered the curve of the hangers while the same rested on the angle iron and sustained the scaffold. They were warned to desist as the hammering might bring down the scaffold. They did not heed, but persisted in the hammering. Within a few hours after the weight on the scaffold and the hangers was increased by the new platforms, and after appellee and his fellow workmen had been hammering the hangers, and while appellee was clinching a rivet, an upright, at a point just in front of him, and where it was bolted to the hanger, split, the scaffold thereby gave way, and appellee fell to the ground and was injured. The subject of this action is the injuries so sustained.
Appellee made no complaint before the accident of insecurity in the scaffold as originally constructed, or as it existed after the addition of the newplatforms. No inducement to continue work was at any time held out to him by promises on the part of appellants to make the scaffold more secure; with full knowledge, or with the means of full knowledge, of the situation *310 lie voluntarily went on with, his work until the accident occurred. It is said the employers (appellants) were guilty of negligence in furnishing to the employee (appellee) an insecure appliance, the insecurity being in the upright in which the split occurred. The scaffold was as to materials and construction such as is ordinarily provided for uses such as those to which this was devoted. The giving way of the scaffold was largely due to the pounding of appellee and his fellow workmen, in the face of warning, upon the hangers, and to the increased weight through the new platforms. But aside from the question of negligence of the master, and other contributory negligence by the servant, it is clear from the facts that appellee assumed the risk of insecurity in the scaffold, therefore cannot recover. The scaffold was of simple construction, no expert knowledge was necessary to enable appellee to judge whether it was sufficiently safe for the purpose to which he was devoting it. From common knowledge he should have known of the effect upon the upright, at the point where it was bolted to the hangers, of the hammering on the hangers, subjected as they were to additional strain through the increased weight on the scaffold through the new platforms. Appellee, a man of mature years, and an experienced workman, knew, or had means of knowing, certainly equal to those of his employer, of the insufficiency in the scaffold for the use to which he was subjecting it, and yet voluntarily continued in such use without complaint on his part, or any promise on the part of his employer to remove the insecurity.
“Where injury is suffered by an employee-, through defects in the machinery or appliances furnished by his employer and used in the business, if the employee knew, or had means of knowledge equal to that of his employer, concerning such defects, yet *311 continued in the latter’s sendee, he cannot recover; provided no inducement, such as a. promise to cure the deféct, and thus remove the danger, led him to remain. * * # the reason * * * is self-evident. If with knowledge or with means of knowledge equal to his employer’s of defects in the machinery, the servant, without remonstrance, voluntarily continued in the service, a waiver of his claim for damages is said to have taken place, or his conduct is regarded as negligence contributing to the resulting injury. ’ ’— Wells v. Coe, 9 Colo. 159, 162.
See also, Denver Tramway Co. v. Nesbit, 22 Colo. 408, 412; Harvey v. Mountain Pride Gold Mining Co., 18 Colo. App. 234; Iowa Gold Mining Company v. Diefenthaler, 32 Colo. 391.
We think the evidence clearly brought the case within the rule announced in the above authorities, which is a sufficient reason for its reversal. Further, as the evidence was fully developed in the former trial and showed an absence of liability upon the part of appellants, the reversal should go with instructions to the lower court to dismiss the action, and it is so ordered.
' Judgment reversed. Reversed.