[No. 4481.]

The Denver & Rio Grande Railroad Company v. Burchard.    .    '

35    539
e37    143,
37    148,

1.  **Master and Servant—Injuries to Servant—Railroads—Negligence—Location of Mail Crane—Duty to Warn Servant.**

In an action against a railroad company for damages for the death of a fireman who was killed by his head coming in contact with a mail crane located from 12 to 20 inches nearer the track than was necessary to its efficient operation, the question of whether the defendant company was guilty of negligence

in so locating the crane, was for the jury; and if such crane was not located unnecessarily near the railroad track, the defendant company was not negligent in failing to warn its employees of its location and the danger incident thereto.

2. **Railroads—Master and Servant—Injuries to Servant—Practice in Civil Actions—Negligence—Evidence—Custom.**

In an action for the death of a railroad fireman, caused by his head coming in contact with a mail crane alleged to have been located too near the track, where the defendant company denied negligence upon its part, evidence of the custom prevailing on other roads as to location and maintenance of similar cranes is admissible.

3. **Appellate Practice—Master and Servant—Injuries to Servant —Negligence—Custom—Prejudicial Error.**

In an action for the death of a railroad fireman caused by his head coming in contact with a mail crane alleged to have been located too near the track, it was prejudicial error for the court to exclude evidence of a custom of other railroads as to the location or maintenance of such cranes, on the theory that there was no evidence of negligence upon the part of defendant company in so locating and maintaining the crane in question, when thereafter the court charged that, if the mail crane when in operation was unnecessarily dangerous to employees, and deceased did not know and by the exercising of ordinary care could not have foreseen the danger to be encountered therefrom, but defendant knew or should have known of such danger and failed to warn deceased thereof, plaintiff was entitled to recover.

4. **Railroads—Master and Servant—Injuries to Servant—Instructions.**

Where, in an action for the death of a railroad fireman killed by his head coming in contact with a mail crane alleged to have been located too near the track, there was much evidence on the issue of defendant's negligence in that regard, it was error for the court to refuse to charge that defendant was not bound to furnish any particular kind of mail cranes, but was only bound to exercise reasonable care in ascertaining that its cranes and engines were reasonably safe and suitable for the purposes for which they were intended, and that if defendant's methods, machinery, and appliances were sufficient for the purposes for which they were used, and reasonably safe, and defendant used ordinary care to keep them so, plaintiff could not recover.

**5. Same—Master and Servant—Injury to Servant—Assumed Risk—Question for Jury.**

In an action for the death of a railroad fireman killed by his head coming in contact with a mail crane alleged to have been erected and maintained too near the track, evidence held to require the submission of the question of assumed risk to the jury.

**6. Appellate Practice—Supreme Court—Change in Number of Judges—Concurrence of Judges.**

Where a case was argued and ·submitted to the supreme court prior to April, 1905, but was not decided until after the number of judges of the constitutional supreme court was changed from three to seven, no valid decision could be rendered which was concurred in by only two judges.

**7. Appellate Practice—Motion for Rehearing—Ground—Amendment.**

Where a motion for leave to assign an additional reason as a ground for rehearing is made on notice and filed within six days after the filing of the petition for rehearing and before the petition had been considered or ·decided, the application will be allowed.

**8. Railroads—Master and Servant—Injuries to Servant—Location of Mail Crane—Negligence.**

The location of a mail crane so as to bring the end of the arm, when extended, to within ten inches of the cab of a passing locomotive, does not constitute negligence per se.

**9. Practice in Civil Actions—Instructions—Refusal—Curing Error.**

Where an instruction stating that a verdict should be rendered for defendant if plaintiff failed to prove her case of alleged negligence by a preponderance of evidence was erroneously refused, the error was not cured by an instruction to the effect that proof of contributory negligence would entitle defendant to a verdict.

*Appeal from the District Court of Arapahoe County. Hon. John I. Mullins, Judge.*

Messrs. Wolcott, Vaile & Waterman, Mr. E. N. Clark, Mr. N. W. Field, and Mr. Wm. N. Vaile, for appellant.

Mr. John H. Murphy, and Messrs. Stuart & Murray, for appellee.

Mr. Justice Gunter delivered the opinion of the court:

This was an action by appellee to recover damages for the death of her husband, due, as it is alleged, to the negligence of appellant. From a verdict and judgment for appellee is this appeal.

The negligence charged was the location and maintenance of a mail crane in unnecessary and dangerous proximity to the road of appellant, and in the failure to notify deceased of such dangerous proximity.

The answer denied the alleged negligence, and averred contributory negligence.

At the close of the evidence for appellee, appellant moved a directed verdict; this was denied.

1. Appellant says there was error in this ruling because of the absence of evidence tending to show negligence. Deceased was employed as a fireman on a mail train running on the road of appellant. As the train was going through a station, and after it had passed the depot and signal board, but some feet before it had reached a mail crane located about 180 feet north of the station, deceased projected his head from the window of the engine cab and looked back, and while so occupied his head came into collision with the extended arm of the crane, causing the fatal injuries complained of. At the time of the accident the mail sack was suspended from the arm of the crane.

When the motion for a directed verdict was made, the evidence tended to show that the crane in question was located so near the track that when its arms were extended for suspending the mail sack an arm came within 4½ inches of the window of the cab of the engine. Also that the crane was located from 13 to 20 inches nearer the track than was neces-

sary to its efficient operation, and that, therefore, the end of the arm was from 13 to 20 inches nearer the cab than was reasonably necessary. Also that such unnecessary nearness of the crane was the proximate cause of the accident. There was also evidence tending to show that cranes of similar construction on other roads were located so as to bring the end of the arm not nearer than from 17 to 23 inches to the window of the cab, and that such cranes accomplished efficiently the purposes of their construction.

To sum up, the evidence at the close of appellee's case in chief tended to show that appellant was guilty of negligence in having located its crane unnecessarily near the track, that thereby it unreasonably and unnecessarily endangered the lives of its employees, and that such unnecessary proximity of the crane was the proximate cause of the death of the deceased.

The law applicable to such a state of the evidence has been announced in what is known as the "mail crane cases."

In *C. B. & Q. R. R. Company v. Gregory*, 58 Ill. 272, decided 1871, a fireman was killed by collision with the arm of a mail crane; the negligence charged was the unnecessary proximity of the crane to the track; there was evidence that the crane was located nearer the track than reasonably necessary for its efficient operation, and that the fatality was due to such unnecessary proximity. The court held the defendant liable because guilty of negligence in unreasonably endangering the lives and safety of its employees by locating the crane unnecessarily near the track. It further held that the court was right in submitting to the jury a defense of contributory negligence.

*Sisco v. L. H. R. R. Company*, 145 New York 296, decided 1895, was an action to recover damages

for fatal injuries sustained by a brakeman through collision with the arm of a mail crane. Deceased, while climbing a ladder on the outside of a box car, to set a brake, came in collision with a mail crane. The undisputed evidence was that the clearance between the end of the arm and the car was 12 inches; that the crane would not operate if further removed; that the crane was identical in construction and relative location to the track with other cranes along the line of the road. The judgment for plaintiff was reversed, because it had not been shown that the defendant was guilty of negligence, that is, it had not been shown that by the exercise of reasonable care, defendant could have rendered the appliance less dangerous and retained its efficiency, by its location further from the track.

In *International & G. N. R. Company v. Stephenson*, 54 S. W. (Court of Civil Appeals, Texas) 1086, decided in 1899, an engineer was struck by a mail crane, the charge was negligence in locating the crane too close to the track. The evidence showed the arm of the crane came within 10 inches of the cab of the engine, that the arms of other cranes on the road did not come nearer than from 17 to 19 inches, that the crane would operate efficiently when so located that the extended arm cleared the cab by from 17 to 19 inches. On the principle that the defendant was guilty of negligence in locating the crane unnecessarily near the track, a verdict was upheld. The question of assumed risk, it was held, was properly put to the jury, because, said the court, it could not declare as a matter of law that the plaintiff knew how dangerously near the arm of the crane came to his cab, nor was such fact obvious.

*Mallott, Receiver, v. Laufman*, 89 Ill. App. 178, decided in 1899, was an action to recover damages for fatal injuries sustained by a fireman through col-

lision with a mail crane. The crane on account of being out of repair leaned unnecessarily near the track. Liability was declared because of the negligence in permitting the crane from lack of repair to incline too near the track.

*L. & N. R. Company v. Milliken,* Adm. 51 S. W. (Ky.) 796, decided 1899, was to recover for fatal injuries sustained by a brakeman. There was evidence that the arm of the crane came $8\frac{1}{2}$ inches nearer the car than was necessary for its efficient operation, or than was the case with other cranes on the line of defendant's road. This unnecessary proximity of the crane was due partially to its being out of repair, and partially to its being located too near the track. The court, *inter alia,* said:

"We cannot under this evidence, say that he failed to show that the defendant might, by the use of reasonable care, have accomplished its purpose, and at the same time protected its employee from the injury. There was therefore sufficient evidence of negligence to submit the case to the jury, and the court did not err in refusing to give the peremptory instructions asked for."

The judgment below for plaintiff was reversed but not because of an absence of proof of negligence in the location and maintenance of the crane. A defense of contributory negligence, it was held, was for the jury.

*Brown v. New York Central & H. R. R. Co.,* 59 New York Supplement 672, decided in 1899, affirmed, court of appeals 60 N. E. 1107, was an action to recover for fatal injuries sustained by a fireman from collision with a mail crane. Because of negligence in the crane being located nearer to the track than was necessary to its efficient operation, and because it leaned towards the track through being out of repair, defendant was held liable. As to the de-

fense of contributory negligence, the court said it was a question for the jury.

In *Kennedy v. Meddaugh,* 118 Federal (Cir. Ct. of App.) 209, decided 1902, a fireman was killed by collision with a mail crane. The distance between the outer end of the arm of the crane and the car was 13½ inches.' The evidence was undisputed that the crane would not work efficiently located farther from the track, that is, that the crane was not located nearer the track than was necessary to its efficient operation. The trial court directed a verdict for the defendant. This was sustained upon review because under such state of facts the defendant was not guilty of negligence, and upon the further ground that the plaintiff had assumed an obvious risk.

The court reviewed the Gregory, Sisco and Milliken cases, and recognized no conflict between them and its ruling. It observed, however, that it must not be considered as approving a statement made in the Gregory case, that if mail cranes could not be placed at a distance that was entirely or approximately safe, they should be abandoned.

The use of mail cranes necessarily, to some extent, increases the danger of railroading, and it is clearly the law, upon reason, and under the authorities, that it was the duty of appellant to not unnecessarily increase this risk, that is, that it was its duty to exercise every reasonable care to render the use of this necessary appliance as reasonably safe as was practicable with its efficient operation. The evidence at the close of appellee's case in chief tended to show that appellant had not exercised this care, therefore as to the question of negligence there was a case for the jury.

Appellants contend that the court should have sustained this motion because the evidence showed that deceased had assumed the risk by reason of its

obviousness, and that he was guilty of such contribu-
tory negligence as to preclude a recovery. If it was
proper to send these questions to the jury at the end
of the case, no prejudicial error was committed in
refusing to take them from the jury on this motion.
It will be more convenient to discuss them later on
in the case, and we will only say at this time that the
trial court did not err in refusing to take them from
the jury. Our conclusion is, that although the trial
court committed error in announcing that there was
then no proof of negligence in the location and main-
tenance of the crane, it did not err in denying the
motion of appellant for a directed verdict.

2. While the court did not commit error in
denying appellant's motion for a directed verdict,
it did err in the theory upon which it then permitted
the case to proceed. In denying the motion it said,
there was no evidence of negligence in the location
and maintenance of the crane, but there was evidence
that the appliance was one of unusual danger, and
that the duty was on appellant to notify its employees
of its dangerous character. Upon the theory that
appellant was guilty of negligence in not having so
notified the deceased, the case was allowed to proceed.
This was error.

While the above authorities sustain the conclu-
sion that appellant was guilty of negligence if it had
located and maintained the crane unnecessarily near
the track, they likewise justify the conclusion that
there was no negligence, hence no liability, provided
the crane, which was manifestly necessary in rail-
roading, was not located in unnecessary proximity
to the track, that is, no nearer than was necessary to
its practical operation.

"It was not found, nor was there any evidence
upon which a jury could infer, that the crane in
question could be placed any further from the track

than it was and perform the function for which it was designed. The plaintiff was bound to show a state of facts indicating negligent construction or location, to raise a question for the jury upon this point. It was not sufficient for him to show an injury, or that operating the device involved danger to the brakeman. He took the risk of all constructions necessary and reasonably adapted to the business of the railroad. The burden was upon him to show that the appliance, concededly useful in the business of the defendant, was improperly constructed or located, and this he wholly failed to do. Proof that it was dangerous was not enough. He was bound to go further and show that the defendant might, by the use of reasonable care, have accomplished its purpose and at the same time protected its employees from the danger."—*Sisco v. L. & H. R. R. Co., supra;* Bailey's "Master and Servant," sec. 602.

The court in *L. & N. R. Co. v. Milliken, supra,* says: "This seems to us to be a fair statement of the law," and further says:

"Appellant asked the court to give this instruction: 'The court instructs the jury that if they believe from the evidence that the mail crane at Camden station, in the petition complained of, was not put closer to the track than necessary for the mail catcher furnished by the United States government to take the mail bag therefrom, then the mail bag being in that position was not negligence in the company, and the jury cannot find against the defendant on account of the position of the mail crane.' This instruction was refused, and the idea was not sufficiently presented by any other instruction given, as to whether the mail bag was in fact any closer to the track than required for the catcher to take it as the mail car passed. The evidence was very conflicting

on this subject. If it was not, the jury should have found for the defendant, and they may not have understood this from the other instructions."

In *Brown v. New York Central & H. R. R. Company, supra,* the court cites with approval *Sisco v. Railway Company, supra,* and says:

"We pass, therefore, to a consideration of the evidence relied upon to establish the defendant's negligence. The mail crane which caused the death of plaintiff's intestate was a contrivance which, when operated in connection with another appliance attached to a mail car, drew a bag of mail into the car while it was in motion. The device is one which of late years has been adopted by the leading railroads of the country, and, while exceedingly simple in its construction and operation, its use does undoubtedly add somewhat to the hazard attending the occupation of railroading. But this fact, standing by itself, it is hardly necessary to suggest, furnishes no ground of complaint to the plaintiff, for her intestate, when he entered the defendant's service, well knew that he was engaging in an exceedingly perilous occupation, and that in consequence thereof he would be constantly exposed to the dangers ordinarily involved in the operation of a vast railroad, employing, as it necessarily did, various devices and appliances to facilitate the transaction of its business. He consequently assumed the risk of all such constructions as were reasonably adapted to the transaction of the defendant's business; and the burden consequently rested upon the plaintiff to establish that this particular appliance, entirely proper in itself, was either ill contrived or improperly located."

In *Kennedy v. Meddaugh, supra,* the court cites with approval *Sisco v. Railway Company,* and says:

"There was, however, no failure on the part of

the defendants to use due care to provide the decedent a reasonably safe place to work, in this particular. Notwithstanding the proximity of the mail crane to the track, and the liability of a negligent fireman coming in contact with it when in position, it was reasonably safe. According to the testimony of defendants' master car builder, who was familiar with the government regulations in such matters, and under whose supervision the catchers were constructed upon the mail cars, and who was therefore an expert in such matters, the mail cranes could not be placed at a greater distance and operated efficiently. The place in which decedent was set to work was, then, according to this opinion, as safe as it could be made, consistently with provision being made for fast passenger trains taking up the mail at small stations without having to stop to do so."

"The general rule of law that a servant takes upon himself the risk or danger which ordinarily attend, or are incident to, the business in which he voluntarily engages, is well settled and undisputed." —*Yeaton v. Boston & Lowell R. R. Company,* 135 Mass. 418; *Lovejoy v. Boston & Lowell R. R. Co.* 125 Mass. 79, 82; *Hough v. Railway Co.,* 100 U. S. 213.

"The authorities require the conclusion that the employee assumes all the risks of the service in which he voluntarily engages, except such as arise from negligence on the part of the employer, so that in whatever form the question may arise, the general rule must be that risks of the service shall not be increased or caused by the employer's negligence, but risks not increased or caused by the employer's negligence are risks of the service which the employee assumes. The test is not danger, but negligence on the part of the employer."—Elliott on Railroads, vol. 3, § 1290.

The appliance in this case was necessary in the operation of appellant's road, and if it had exercised reasonable care in the location and maintenance of the crane, it had discharged its duty, and was under no obligation to notify deceased of the proximity of the crane to the track. Upon but one theory could defendant be held liable for negligence, on account of the use of the crane, and that was negligence in its location and maintenance. If there was no negligence in the location and maintenance of the crane, there was no negligence in the failure to notify. This was the only question of negligence for the jury. If there was no evidence of negligence in this particular, the case should, upon this motion, have been taken from the jury. As we have seen, however, while the court was in error in declaring there was no evidence of negligence in the location and maintenance of the crane, it was right in declining to sustain the motion for a directed verdict.

3. When appellant opened its case it offered to show the custom obtaining as to the location and maintenance of cranes on other roads. The following took place:

"Q. You may state to the jury how the mail cranes upon the Burlington road are constructed. .

Plaintiff objects as incompetent, immaterial and irrelevant.

The Court: I don't see why this evidence should be introduced now, because the court has held that the company was not guilty of negligence in constructing this crane.    *    *    *

Mr. Clark, for defendant: The ruling now leaves it for the jury to determine whether or not we should warn an employee of the presence of the mail crane at that particular distance from the track.

The Court: Yes, sir.

Mr. Clark, for defendant: The court does not require us to prove that we gave notice, and we might as well state at this stage of the proceedings there won't be any contention that it ever did give notice, but he was, under the circumstances which gave him notice.

The Court: That is the proposition I think you ought to confine yourself to—the evidence of contributory negligence; that he knew or ought to have known of it. It seems to me that that is the only question left in this case.

Mr. Clark, for defendant: It is for the purpose of showing that it is the same kind of crane, constructed in the same manner as those used by this road, and this crane at Fountain.

&ast;&ast;&ast;&ast;&ast;&ast;

Q. Has it been found by experience on your road that that is the proper distance at which to set these cranes in order to secure proper service?

Plaintiff objects as leading, suggestive and incompetent.

Sustained. Defendant excepts.

Q. Do you know what the experience of the Burlington road, and especially your division of the Burlington road, has been with reference to the use and efficiency of these mail cranes?

A. Yes, sir.

Q. You may state what it has been.

Plaintiff objects as incompetent, irrelevant and immaterial.

Sustained. Defendant excepts.

Q. Are mail cranes in operation along your division of the Burlington road in a proper position to perform the service for which they were erected there, or not?

Same objection, ruling and exception.''

A witness, sworn on behalf of appellant, testi-
fied: "These cranes are erected where there is a post-
office and trains do not stop. Fountain is such a sta-
tion. I have made investigation of all mail cranes
upon roads other than the Denver & Rio Grande. I
have corresponded with a number of officials of roads
running into Denver. I have observed mail cranes
on surrounding roads—the Burlington, Missouri Pa-
cific, Santa Fe, Union Pacific, Rio Grande Western.
The cranes on other roads are similar to ours.

Q. What was the result of your observation
relative to the location of these cranes to the track?"

An objection of immateriality and irrelevancy
was sustained.

The court excluded this evidence upon the theory
announced in denying the appellant's motion for a
directed verdict made at the close of the case in chief
for the appellee. This theory was that there was no
evidence of negligence in the location and mainten-
ance of the crane, but that the case would be permit-
ted to proceed upon the theory that appellant was
guilty of negligence in its failure to notify deceased
of the proximity of the crane to the track.

As we have attempted to show before, there was
no duty on the appellant to notify appellee of the
proximity of the crane, provided there was an ab-
sence of negligence in the location and maintenance
of the crane. If the court intended to adhere to its
position that there was no question of negligence in
location and maintenance for the jury, it ought, as
we have stated, to have taken the case from the jury.
If it did not it ought to have permitted the appellant
to show that it was not guilty of the only negligence
for which it could be held liable, and the only negli-
gence which was properly charged against it in the
complaint. By the above rulings the court excluded
evidence competent for such purpose, and gave ap-

pellant sufficient reason to believe that evidence tending to show reasonable and ordinary care in the location and maintenance of the crane, and that it was not located unnecessarily near the track, would not be received. When it came to charge the jury it put to the jury the question which it held was not before the jury, and upon which, by the above rulings it had prevented defendant from offering evidence.

In Instruction No. 9, the court charged:

"If you believe from the evidence in this case that the mail crane when in operation was unnecessarily dangerous to employees, and to C. W. Burchard in the performance of his duty, and in the exercise of ordinary care on the defendant's locomotive, and that the said C. W. Burchard did not know and could not by the exercise of ordinary care have foreseen the dangers to be encountered from said mail crane, and that the defendant knew, or ought to have known, of its dangers, and after such knowledge, or after it might have had such knowledge by the use of ordinary care, it failed to give the plaintiff's decedent, C. W. Burchard, warning of such danger, then your verdict must be for the plaintiff."

The court here submitted to the jury the question of whether or not the crane was unnecessarily dangerous, that is, whether it was unnecessarily near the track, that being the only cause assigned for its being dangerous in operation.

Prejudice from the exclusion of this evidence may also have arisen through Instruction No. 8. The verdict of the jury was a general one, there being no indication therein, or otherwise, for what negligence the defendant was held liable, the verdict of the jury may have been based upon the fact that it found the defendant guilty of negligence in the location and maintenance of the crane. This it was permitted to

do by Instruction No. 8, the pertinent part of which instruction reads as follows:

"And if you find from the evidence that the said C. W. Burchard was obeying a rule of the company, and that, while in the performance of his duty as required by such rule, and while exercising ordinary care on his part, he was injured through defendant's negligence in a manner which resulted in his death, then the defendant in this case is liable therefor and your verdict should be for plaintiff."

Again, in Instruction No. 2, the court charges:

"* * *. ; but if you believe from the evidence, that its operation was one of unusual risk and danger to employees, and not one assumed by them in the line of their employment, then it was the duty of the defendant company to so notify its employees, unless you believe from the evidence that such employees had actual knowledge or by the use of ordinary care could have known its dangerous character."

If appellant used reasonable and ordinary care to locate and maintain the crane so that it was reasonably safe, then it was not of unusual risk and danger to employees; the excluded evidence was competent for this purpose.

4. Much evidence had been adduced by appellee tending to show that the appellant was guilty of negligence, and, notwithstanding the above rulings of the court, there was much evidence in for the appellant tending to show that it was not guilty of the negligence charged. If the case was to go to the jury the defendant was entitled to have an instruction that if there was no negligence in the location and maintenance of the crane, the verdict should be for the defendant. It asked the court to so charge in refused Instruction No. 6. Such instruction reads:

"The court instructs the jury that the defendant in this case was under no obligation, by contract of employment with said C. W. Burchard, deceased, or otherwise, to furnish any particular kind of mail cranes, or to adopt the latest and most improved appliances in connection therewith, or to use in its business, locomotives of any particular kind or width, and that it was only bound to exercise reasonable care to see that the mail cranes and engines used by it were reasonably safe and suitable for the purposes for which they were used; and if the jury believe, from the evidence, that the defendant's mail crane and engine in question were suitable for the purposes for which they were designed and used, and were reasonably safe for such use, they should return a verdict for the defendant."

The following was asked in the request for Instruction No. 16:

"If you believe from the evidence that the defendant's methods, machinery, instrumentalities and appliances, and the mail crane in question, were sufficient for the purposes for which they were used, and reasonably safe when the said C. W. Burchard entered the defendant's employ, and that the defendant used ordinary care to keep them and said crane sufficient for such purposes, and reasonably safe, then said C. W. Burchard assumed the risk of danger from their use and plaintiff cannot recover in this action."

This request was refused. Nowhere in the charge of the court was the defendant given the benefit of the law as announced in such two instructions. Further, the jury was permitted to find against the defendant, although the defendant had been free of negligence in the construction and maintenance of the crane.

5. It is urged by appellant that the evidence showed that the deceased had assumed the risk of defendant's negligence, if any, in the location and maintenance of the crane, because of the alleged obviousness of its danger. We are here considering the question of assumption of risk in case the defendant was negligent, and not the case of the risk of danger of an appliance which every employee assumes, provided it is not unnecessarily dangerous through the negligence of the employer.

The law as to the assumption of the risk is well settled, and has been frequently announced and applied in this state. The difficulty, however, is in applying the law of assumption of the risk to the facts of each particular case. Cases announcing and applying the law of assumption of the risk, among others, are: *Wells v. Coe*, 9 Colo. 159; *B. & C. R. R. Co. v. Liehe*, 17 Colo. 280; *Tramway v. Nesbit*, 22 Colo. 408; *D. & R. G. R. Co. v. Scott*, 81 Pacific 763, 765; *Hughes v. Schnavel*, 78 Pacific (Ct. of App.) 623; *Iowa Gold Min. Co. v. Diefenthaler*, 76 Pac. (Colo. Sup. Ct.) 981.

In this case the evidence is conflicting as to the facts going to show an assumption of the risk. Further, minds could reasonably differ as to whether the danger, from this crane, if located as the evidence for appellee tended to show, was so obvious as to justify us in declaring as a matter of law that the deceased had assumed the risk. We think that both this question and the one of contributory negligence were properly for the jury.

To sum up: A vital question in the case was that of alleged negligence in the location and maintenance of the crane. The appellant was entitled to fully present its evidence on this question; this, by the rulings of the court, it was prevented from doing. Further, it was entitled to have the jury properly

charged on this question; this right also was denied it by the court.

6. This case was argued and submitted prior to April, 1905; it was decided on May 1st, 1905; April 5th, 1905, the old supreme court, consisting of three judges, ceased to exist, and on and from April 5th, 1905, the constitutional supreme court consisted of seven judges, and was controlled by the constitution as amended. After April 5th, 1905, no valid or constitutional decision could be rendered by the court unless concurred in by at least three judges. The former opinion handed down herein was concurred in by but two judges, the decision was not in conformity with constitutional requirements, and not being such was a sufficient reason for ordering a rehearing before the full bench.

All the questions considered were properly preserved by the record.

*Judgment reversed.*

Mr. Justice Steele concurs only as to sub-divisions 1, 5 and 6 of the opinion.

## ON REHEARING.

Opinion by Mr. Justice Gunter:

Counsel for appellee, in their brief in support of the petition for a rehearing, say:

"Several days after the expiration of the tenday limit, counsel for the company, without having applied for, or obtained, any extension of time, filed an entirely new reason for a rehearing, based on the said dissent (that of Mr. Justice Campbell) and claiming that the decision by the two justices was illegal."

The facts show counsel in error in this statement. Upon the original hearing an opinion was

handed down, joined in by only two justices, affirming the judgment below. Within the ten days' limit a petition for rehearing was filed by counsel for appellant company. Within six days after the filing of this petition counsel filed a motion for leave to assign an additional reason as a ground for rehearing. This ground was the constitutional one stated in the main opinion. Of this application counsel for appellee had notice, and upon the day noticed an order was made permitting the amendment of the petition for rehearing. The application for leave to amend, and the order permitting the amendment, were made before the petition for rehearing had been considered or decided by the court. The practice of allowing such amendments is a usual one with this court, and we can conceive no reason why it is not in the interest of justice and should not be pursued. Certain it is, appellee sustained no prejudice from it, because the original opinion, being upon its face in plain violation of the constitution, was a nullity. The court was without power to hand down a decision concurred in by only two justices. The court would have ordered a rehearing on its own motion.

Two. Counsel for appellee, as a further ground for rehearing, say:

"We charge that the evidence in the case was so clear, so strong, so conclusive that the plaintiff was in law entitled to recover no matter what errors might have been committed by the trial court in its instructions or otherwise, provided it did not rule out competent evidence offered by defendant."

The location of the crane unnecessarily near the track, and negligence in such location, was a vital issue. There was evidence for plaintiff that the arm of the crane came within $4\frac{1}{2}$ inches of the window of the cab, that this was unnecessarily near, and that defendant was guilty of negligence in so locating the

crane. There was evidence for the defendant that the clearance of the arm of the crane was ten inches, that such proximity was necessary for the efficient operation of the appliance, and that defendant was not guilty of negligence in its placing. Vital issues of fact were thus presented for the determination of a trial court and jury, and this court cannot sustain a judgment resting upon a determination of such issues unless such issues were properly submitted to a jury, which we have attempted to show in the main opinion they were not.

Three. It is next contended that no error was committed in the rulings upon evidence discussed in the main opinion, because counsel say that such evidence was inadmissible, and for the further reason, that all of the evidence so excluded was substantially admitted, or that defendant had the opportunity to introduce it. The only cause of action in support of which there was any evidence was, that the crane was located unnecessarily near the track, and that defendant was guilty of negligence in such location. A catcher of the length prescribed by the postoffice department was provided by the government, and the crane was constructed and located by defendant road. The combined appliance, the catcher and the crane, was a necessary instrumentality in railroading; it was made up of the catcher and the crane, so constructed and located with reference to each other that the combined appliance would operate efficiently. It required skill and experience to determine how this combined appliance should be put up, that is, it required skill and experience to determine how far the crane should be removed from the catcher. It was, as stated, incumbent upon the plaintiff to show that the defendant had located the crane unnecessarily near the track, and that it was guilty of negligence in having done so. To prove this issue, rail-

way mail clerks, of years of experience on the B.
& M. R. R., and other roads, testified as to the
identity of the catcher on all roads; that the cranes
were substantially the same; that the cranes on the
B. & M. road, and other roads, were further removed
from the track by several inches than the one in-
volved herein; and that the combined catcher and
crane in such instances worked efficiently.   They
further said that a catcher identical with the one
involved in this case would efficiently take mail sus-
pended a number of inches further from the track
than the evidence for plaintiff tended to show the
crane herein was located, and further than the evi-
dence for defendant tended to show it was located.
Their evidence went to the custom of construction, lo-
cation and operation of cranes on other roads.   This
evidence, it seems to us, was clearly competent as
tending to show that the crane in this case was lo-
cated unnecessarily near the track, and that the de-
fendant was guilty of negligence in its location—that
is, that it was guilty of negligence in the construction
of the combined appliance.   The witnesses who spoke
from their experience on the B. & M. road spoke
practically from experiments. If this evidence was
admissible for the plaintiff, which we think it was, it
was competent for the defendant to disprove it.   If
so, it was competent for the defendant to show that
the cranes on the B. & M. road were not located as
such witnesses testified, but as the defendant's crane
was located.   It was also competent for the defendant
to show, not as controlling, but as bearing on the
question of negligence, how cranes were located cus-
tomarily on other roads.   We think this class of evi-
dence was erroneously excluded. If the crane located
as defendant's evidence tended to show that it was—
that is, so located as to bring the arm not nearer than
ten inches to the cab—was not negligence *per se,* it

was error to exclude evidence of the custom of other roads as to the location and operation of their cranes. We cannot declare as a matter of law that the location of the crane so as to bring the end of the arm within ten inches of the cab was negligent *per se*. Whether such location was negligent would depend upon whether it brought the arm of the crane unreasonably and unnecessarily near the cab for the efficient operation of the appliance. If it was unreasonably and unnecessarily near for the efficient operation of the appliance, there was negligence, otherwise not. As stated in the main opinion, the mere fact that it was dangerously near did not constitute *per se* negligence.

The prejudice from the rulings of the court sustaining plaintiff's objections to questions put to the witness Perry, and cited in the main opinion, was, in a measure, but not entirely, cured by subsequent testimony from that witness. Such evidence, however, of that class as did come in from that witness came in under the condemnation of the court and with its credibility impaired. Some testimony of this nature came in from the witnesses, Quereau, Mettler and Lawhead, but what other testimony counsel would have introduced we know not. At no time did the court recede from its position that this class of evidence was inadmissible. At no time did the court announce that it would receive this class of evidence. The court did announce when the defendant was introducing evidence going to contributory negligence, assumption of risk, and the rules of the company, that it would not limit it as to the number of witnesses; but it did not say that it would permit the introduction of evidence which it excluded as discussed in the main opinion. The prejudice from the exclusion of this class of evidence is not measured simply by the rejection of the evidence. The court

in ruling announced as its reason for the exclusion of the evidence that there was no evidence of negligence in the location and maintenance of the crane. This view of the law was reiterated more than once in the course of the trial. Counsel for defendant was thus justified in believing that this issue would not go to the jury and in offering no evidence upon it. What evidence he failed to offer we know not, he was justified, we repeat, in offering none. The only cause of action to sustain which there was any evidence was thus withdrawn from the jury, and the defendant was justified in offering no evidence in resistance of it. A verdict for the plaintiff with such condition of the record cannot stand. Defendant has not had its day in court on the only cause of action to sustain which there was any evidence for plaintiff.

Error in refusing tendered Instruction 6, discussed in the main opinion, was not cured by the giving of Instruction 20. According to the refused instruction a verdict should go for the defendant if plaintiff failed to prove her case of alleged negligence by a preponderance of the evidence. Prejudice from the failure to give the instruction was not cured by Instruction 20 given, wherein the jury is charged that proof of contributory negligence would entitle defendant to a verdict. The law presented by the one instruction was not covered by the other.

Since the incoming of the petition for a rehearing as to the last opinion handed down, we have re-read this voluminous record, including briefs of counsel, and are still fixedly of the opinion that the judgment should be reversed.

Petition for rehearing denied.

Decision *en banc*.                    *Denied.*

The position of Mr. Justice Steele remains the same as in the original opinion.