502 P.2d 1327

**ROOFING WHOLESALE CO., INC.,**
Petitioner,

v.

**Wilson D. PALMER, as Clerk of the Superior Court of Maricopa County, in and for the State of Arizona, Respondent.**

**No. 10937.**

Supreme Court of Arizona,
In Banc.

Nov. 15, 1972.

Rehearing Denied Jan. 2, 1973.

Jerold Kaplan and John W. Nelson, Phoenix, for petitioner.

Moise Berger, Maricopa County Atty., by William Carter, Deputy County Atty., Phoenix, for respondent.

CAMERON, Vice Chief Justice.

This is a petition for special action in the nature of mandamus in which we are asked to order the respondent, Wilson D. Palmer, Clerk of the Superior Court of Maricopa County, Arizona, to issue a writ of attachment and writ of garnishment pursuant to §§ 12–1521, 1522, and 1571 A. R.S.; Because of recent developments in this field of law and because it was a matter of general interest and importance throughout the State, we accepted jurisdiction.

The plaintiff-petitioner, Roofing Wholesale Co., Inc., filed an action against James E. Diehl, Jane Doe Diehl, dba Diehl's Construction Company, Consolidated Services, Inc., and State Automobile & Casualty Underwriters, as the result of an expressed open account contract for the direct payment of money. At the time of filing the complaint, the plaintiff-petitioner asked the Clerk of the Court to issue a writ of general attachment and writ of garnishment which the Clerk of the Court refused to issue. The petition for special action to this court resulted.

Our statutes read:

"§ 12–1521. Attachment of property of defendant

"A plaintiff, at the time of filing the complaint or at any time thereafter, may in the following cases have the property of defendant attached as security for satisfaction of any judgment which may be recovered, unless defendant gives security to pay such judgment:

"1. In an action upon a contract, express or implied, for direct payment of money, where the contract is made or is payable in this state and is not fully secured by mortgage or lien upon real or personal property or pledge of personal property, or, if originally so secured, such security has, without any act of plaintiff or the person to whom the security was given, become valueless."

And:

"§ 12–1522. Affidavit for issuance of writ of attachment

"A. The clerk of the court or justice of the peace shall issue the writ of attachment upon receiving an affidavit by or on behalf of plaintiff * * *."

The United States Supreme Court in the case of Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) held that prejudgment garnishment procedures whereby a defendant's wages are frozen in the interim between the garnishment of the wages and the determination of the lawsuit without the defendant having a chance to be heard prior to the garnishment, violate the 14th Amendment to the United States Constitution. As a result of said decision, this court was called upon to rule upon the constitutionality of our garnishment statutes in two cases:

" * * * Therefore, we hold that the procedure for garnishment of wages in this state does not measure up to the standards set forth in *Sniadach,* and that prior to the issuance of a prejudgment writ of garnishment of wages there must be some provision for notice to the defendant and a hearing on the validity of the plaintiff's claim.

* * * * * *

"We emphasize, however, that our holding is limited to the prejudgment garnishment of *wages* (as was the opinion of *Sniadach*). In this regard, Termplan

maintains that the Court below went beyond the scope of the *Sniadach* opinion when it ruled that the procedure therein must be followed in attachments and garnishment of property other than wages. We agree, and hold that that portion of the order in question must be vacated." Termplan Inc. v. Superior Court of Maricopa Co., 105 Ariz. 270, 272, 463 P.2d 68, 70 (1969).

And:

"Appellee urges that we declare prejudgment garnishment in this case unconstitutional as a deprivation of due process pursuant to Snidach [sic] v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). We decline to so hold. This court has previously held that the Snidach [sic] holding was limited to wages. * * *

\* \* \* \* \* \*

"There exist proper grounds for distinguishing between depriving a wage earner of his present cash flow by prejudgment garnishment and impounding reserve assets of a business enterprise. The latter's entity rights are adequately protected by the right to replevy under § 12–1578, subsec. B, A.R.S.; the counterclaim procedures for wrongful garnishment under De Wulf v. Bissell, 83 Ariz. 68, 316 P.2d 492 (1957); and, the ultimate hearing on the merits." First National Bank & Trust Co. v. Pomona Mach. Co., 107 Ariz. 286, 290, 486 P.2d 184, 188 (1971).

We are not alone in limiting the reach of Sniadach, supra, to wages. See American Olean Tile Company v. Zimmerman, 317 F.Supp. 150 (U.S.D.C.Hawaii 1970); Black Watch Farms, Inc. v. Jack R. Dick v. Meckler, 323 F.Supp. 100 (U.S.D.C. Conn.1971). Other courts have come to an opposite rule. See Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969); Jones Press, Inc. v. Motor Travel Service, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970); Randone v. Appellate Department of Superior Court, 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971).

On 12 June 1972, the United States Supreme Court handed down its decision in the matter of Fuentes v. Shevin and Parham v. Cortese, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), in which, by a four to three decision, the Supreme Court held that the replevin laws in both cases violated the due process clause of the 14th Amendment. Four members of the court held that the due process clause of the United States Constitution gave the defendant the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner prior to the actual seizure of the property involved. It was upon the basis of this opinion that the Federal District Court in Arizona in the case of Western Coach Corp. v. Shreve, 344 F. Supp. 1136 (D.Ariz.1972), stated, in a ruling limited to that case only, that the Arizona garnishment and attachment statute was unconstitutional even when wages were not concerned.

A reading of Fuentes v. Shevin and Parham v. Cortese, supra, makes it clear that the four judges in that opinion fully intended to apply the due process clause of the United States Constitution to situations as are presently before the court, absent, of course, a "contractual waiver of due process rights * * * 'voluntarily, intelligently and knowingly' made." Fuentes, supra, 407 U.S. at 94–95, 92 S.Ct. at 2001. The petitioner, however, asserts that because two justices did not participate in this opinion the four man opinion is clearly not a majority opinion, is advisory only, and therefore not binding upon this court. Admittedly, were we convinced that the four man majority of the United States Supreme Court in Fuentes, supra, would become at least a five man majority when the two judges who did not participate in the particular case are called up to participate in a similar question, we would then be inclined to follow the decision as set down in Fuentes, supra. When, however, we have doubts that once the full court hears the case that the opinion will stand, we are reluctant to declare unconstitutional Arizona statutes based upon a decision by

less than a clear majority. In this we are not without some support from the United States Supreme Court itself:

"But it does not follow, as respondent urges, that the writ should be dismissed as improvidently granted. The Moscow case is not res judicata since respondent was not a party to that suit. (citations omitted) Nor was our affirmance of the judgment in that case by an equally divided court an authoritative precedent. While it was conclusive and binding upon the parties as respects that controversy (Durant v. Essex Co., 7 Wall. 107, 19 L.Ed. 154), the lack of an agreement by a majority of the Court on the principles of law involved prevents it from being an authoritative determination for other cases. * * *." United States v. Pink, 315 U.S. 203, 216, 62 S.Ct. 552, 558, 86 L.Ed. 796, 810 (1942).

Further, the Court of Customs and Patent Appeals has stated:

"Where courts are concerned, it has been uniformly held, so far as we can ascertain, that a clear majority of all the legally constituted members thereof shall concur or no valid judgment may be entered except such as may follow no decision." Frischer & Co. v. Bakelite Corp., 39 F.2d 247, 255 (1930).

In the case of Federal Trade Commission v. Flotill Products, Inc., 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967), Mr. Justice Brennan at Footnote 7, discussed the statement from the Frischer case, supra, as follows:

"7. The authorities cited in *Frischer* as supporting the exception fail with one exception to do so. Four of the decisions cited dealt simply with the rule in cases where a court is equally divided in its vote. Madlem's Appeal, 103 Pa. 584 (1883); Putnam v. Rees, 12 Ohio 21 (1843); Northern R. Co. v. Concord R. Co., 50 N.H. 166 (1870); Ayres v. Bensley, 32 Cal. 632 (1867). Another, in addition to dealing with the question of an equally divided court, involved a constitutional provision for the concurrence of

a majority of the judges *sitting*. Mugge v. Tate, Jones & Co., 51 Fla. 255, 41 So. 603 (1906). The others are likewise not in point. Deglow v. Kruse, 57 Ohio St. 434, 49 N.E. 477 (1898) (two of three constitutes quorum, both must concur); Denver & R. G. R. Co. v. Burchard, 35 Colo. 539, 558, 86 P. 749, 755 (1906) (constitutional requirement that three of seven judges concur). The whole of the court's discussion in the only decision in point, Johnson v. State ex rel. Brannon, 1 Ga. 271 (1846), was '[t]he law, organizing the Inferior Court, constitutes five justices the court. We hold the concurrence of a majority of the whole number necessary to the validity of their action.' Id., at 274. No authority was cited for this holding.

"In addition, respondent cites Paine v. Foster, 9 Okl. 213, 53 P. 109 (1896), 9 Okl. 257, 59 P. 252 (1899). Its holding was, however, predicated on a *statutory* requirement that three judges of a five-judge court must concur in order to reverse a lower court judgment. See 9 Okl. 257, 259, 260, 60 P. 24 (dissenting opinion).

"Congress has prescribed a quorum of six Justices for this Court but has not provided how many of the quorum can act for the Court. 28 U.S.C. § 1. Congress has, however, dealt expressly with the latter matter in the statutes concerning the courts of appeals, 28 U.S.C. § 46(d); the Court of Claims, 28 U.S.C. § 175(f) (1964 ed., Supp. II); and the Court of Customs and Patent Appeals, 28 U.S.C. § 215."

If Justice Brennan did not answer the question raised, neither did he disapprove the statement in Frischer, supra.

■ Both the Arizona Constitution, Article II, § 3, A.R.S., and the United States Constitution, Article VI, provide that the United States Constitution shall be the "supreme law of the land" and we are bound by that Constitution as interpreted by the United States Supreme Court even though we may respectfully disagree with those in-

terpretations. We do not believe, however, that it is unreasonable to ask that before we are required to declare unconstitutional statutes enacted by our legislature with the resulting chaos to an important part of our commercial and contract law, that the United States Supreme Court speak with at least a majority voice on the subject.

■ Until such time as the United States Supreme Court decides this question by a clear majority, we will continue to uphold the garnishment and attachment statutes of this State in cases wherein wages are not involved. Cain v. Commonwealth of Kentucky, Ky., 437 S.W.2d 769 (1969); Florida v. Reese, Fla., 222 So.2d 732 (1969).

The issuance of the mandate will constitute an order of this court that the respondent, Wilson D. Palmer, as Clerk of the Superior Court of Maricopa County, issue the writ of general attachment and garnishment in the above entitled action.

Relief granted.

HOLOHAN, J., concurs.

HAYS, Chief Justice (concurring):

A quotation from a concurring opinion of Chief Justice Weintraub of New Jersey is most apt here. Although the legal subject matter in that opinion is in the criminal field, the ideas expressed therein fit the problems of this case as though tailored for them. In State of New Jersey v. Victor R. Funicello, 60 N.J. 60 at 69, 286 A.2d 55 at 59–60, Chief Justice Weintraub said:

"Judicial management is high among present priorities. The courts being unable to meet the demands upon them, it is understandable that among the solvents would be a proposal that the judiciary borrow rudimentary principles from the business world. The first rule of good management must be that management shall manage. A work force cannot be effective if it cannot know how it is to function. I can think of no area in which guidance is more vital,

than the area of criminal law, for it is an area of intense activity, touching every citizen. The case before us dramatizes the failure to provide direction and suggests the Federal and State judiciaries cannot meet their responsibilities unless some rules are changed."

I intend no disrespect for our highest court when I indicate many times in the recent past that court has failed to realize the burdens of uncertainty they have cast upon the state courts. Good management of our state's legal business requires definitive answers now. A half answer which requires a guess as to what the high court really means, does nothing more than compound our problems of judicial management.

In this case, we really ask for a clearer command before we declare an established law of our state unconstitutional and disrupt the business and legal practices of our community.

LOCKWOOD, Justice (dissenting):

I dissent. Although I feel it is a grave matter to declare unconstitutional laws existing in Arizona in the commercial field for many years, both the Constitutions of the United States and of the State of Arizona declare that the United States Constitution is the supreme law of the land, and an interpretation of the Supreme Court of the United States is therefore binding on all of the states. I therefore feel it is a still graver matter to declare invalid the law as announced by the United States Supreme Court.

It is my opinion that merely for the expediency of upholding state laws which we feel have been considered constitutional and valid before a recent opinion of the United States Supreme Court declaring them otherwise, we have no right to question the authority of that Court when the matter has been considered by more than a quorum of that Court and has been decided by a majority thereof. That is a matter strictly within the jurisdiction of the Supreme Court itself.

 

· Neither Congress nor the Supreme Court has itself determined by statute or rule what constitutes a "majority of the Court" for the purpose of making its decisions binding generally, although each has declared six members to constitute a "quorum". All of the citations of the majority opinion here refer to decisions of an equally divided court which, of course, have no binding effect except on the particular case involved. None of them, so far as the Supreme Court is concerned, refer to an unequally divided court which constitutes a quorum. Those cases which hold there must be a majority of a court deal with specific statutory or constitutional provisions of states, or federal statutes applying to inferior tribunals.

The United States Supreme Court has pointedly ignored resolution of the question.

I cannot agree that this Court has the right to "be convinced" or "guess" what the two judges who did not participate in Fuentes v. Shevin, supra, would do if they had participated or if they should be presented a similar question in the future.

For the foregoing reasons, I dissent.

STRUCKMEYER, Justice (dissenting).

I join in the dissent of Justice Lockwood, but I would emphasize one point.

During the same term, October 1971, that Fuentes v. Shevin, supra, was handed down, eleven other opinions of the United States Supreme Court were decided by a four-member majority. Likewise, between October 1949 and October 1957, sixteen opinions of the Supreme Court of the United States were decided by a four-member majority. In 1920, the leading case of United States v. United States Steel Corp., 251 U.S. 417, 40 S.Ct. 293, 64 L.Ed. 343, was decided by a four-member majority.

I cannot believe the important aspects of the United States Constitution and federal statutes so construed are not binding on all other courts of this country simply because all nine members of the Court did not enter into the decision. Cases such as these must be held to be binding precedent; otherwise, important areas of constitutional law and congressional enactments remain in limbo, until finally the court in a subsequent action has an opportunity, years later perhaps, to re-examine the questions presented. The resulting mischief is intolerable.