STATE of Missouri ex rel. Anita Louise WILLIAMS, Relator-Appellant,

v.

Robert W. BERREY, III, Magistrate, Fourth District, Jackson County, Respondent.

No. 56752.

Supreme Court of Missouri, En Banc.

April 9, 1973.

James L. Muller, Richard F. Halliburton, The Legal Aid and Defender Society of Greater Kansas City, Inc., Kansas City, for relator-appellant.

Kenneth E. Bigus, Kansas City, for respondent.

BARDGETT, Judge.

The questions in this prohibition appeal involve the replevin statutes of Missouri. They are: (1) does a magistrate court have the jurisdiction to enter a default judgment for possession where there has been no service of process on the defendant but the chattels have been taken by the sheriff pursuant to a replevin writ and bond and delivered to the plaintiff, and (2) whether or not property was taken from the possession of relator-appellant in violation of the due process clause of the U.S. Const., Amendment 14, under Fuentes v. Shevin and Parham v. Cortese, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), hereinafter referred to as Fuentes v. Shevin.

Relator-appellant, Anita Williams, filed this prohibition suit in the Circuit Court of Jackson County against respondent Robert W. Berrey, III, magistrate judge, seeking an order commanding respondent to quash a certain summons, return and writ of replevin in a magistrate court replevin suit in which relator-appellant was defendant and Midwest Furniture & Utilities, Inc. (hereinafter Midwest) was plaintiff upon the grounds that the magistrate lacked jurisdiction to enter judgment against relator-appellant.

The attack upon the constitutionality of the Missouri replevin statutes necessitates a construction of the Constitutions of Missouri and of the United States and, there-

fore, this court has jurisdiction. Mo. Const. Art. V, § 3, V.A.M.S., as amended.

Respondent has stipulated that the statement of facts as set forth in relator-appellant's brief is correct. The facts necessary to an understanding of the issues will be set forth.

On July 22, 1970, Midwest filed a statement and affidavit in replevin in magistrate court alleging that it was entitled to the possession of eleven items of personal property. The items consisted of a bedroom set, kitchen stove, refrigerator, beds, mattresses and springs. The value was stated to be $1,560.70 and it was alleged that the chattels were wrongfully detained by defendant Anita Williams; that they had not been seized under any process, etc.; that the property had been injured in the amount of $500; that for the taking and detention thereof Midwest was damaged $500; that Midwest will be in danger of losing said property unless it be taken out of the possession of defendant. The prayer sought a judgment for possession, $500 damages for the taking and detention thereof and injuries thereto, and attorneys' fees in the sum of $500. Bond in the sum of $3,121.40 was posted. On August 10, 1970, the clerk of the magistrate court issued the replevin writ over the stamped facsimile signature of the magistrate in accordance with established custom. The replevin writ commanded the constable "to take [the described property] from the possession of the defendant . . . and to deliver the same to the plaintiff", and the writ further commanded the constable to "summon the said Anita Louise Williams . . . to appear before [the magistrate] on the 9th day of September, 1970 at 10 o'clock in the forenoon, to answer to the complaint of [the plaintiff Midwest]."

On August 17, 1970, the constable went to Anita Williams' home, forcibly broke and entered the house and removed therefrom all of the property listed in the writ, all without notice to, or knowledge or con-

sent of Anita Williams or any member of her household.

There was no service of the writ or summons upon Anita Williams. The constable's return is that the writ was executed "by taking the within named merchandise and giving to plaintiff."

On September 16, 1970, Anita Williams, by special appearance, filed a motion to quash the summons and return for want of proper service on her.

On October 14, 1970, Anita Williams again appeared specially and filed a motion to quash the writ of replevin alleging the unconstitutionality of the statutes under which the writ of replevin was executed.

On October 26, 1970, the court overruled the motion to quash the summons and return and the writ of replevin. The attorneys for the parties were present in court. While some differences arose between the magistrate and the attorney for Anita Williams with respect to the efforts of the attorney for Williams to file a petition for writ of prohibition immediately prior to the entry of a default judgment against Williams, suffice it to say that the magistrate, immediately following his order overruling the motions to quash, entered a judgment for plaintiff by default for possession of the chattels and costs.

Throughout the magistrate court proceedings defendant Anita Williams never pleaded or asserted any defense to the merits nor did she enter her appearance generally. At no time did Midwest obtain any type of service of process on her. The only official act that was performed by the constable was to carry out the order of the magistrate to seize the chattels and deliver them to plaintiff Midwest.

The entry of the default judgment by the magistrate immediately followed the magistrate's order overruling the motions to quash, and immediately thereafter Anita Williams filed her petition for writ of prohibition in the Circuit Court of Jackson County. The substance of the petition for writ of prohibition is the same as the motions to quash filed in magistrate court referred to above. The relief sought in circuit court was an order commanding the magistrate to quash the summons and return and the writ of replevin and to dismiss said magistrate court action and to refrain from any further proceedings in said action.

Following an evidentiary hearing in circuit court, the court entered its findings of fact, conclusions of law and judgment. The court found, inter alia, that Midwest filed its replevin action in magistrate court and posted the appropriate bond; that the writ was served by seizure of the property described therein; that Anita Williams was not personally served with the writ of replevin; that Anita Williams appeared specially in magistrate court to file motions to quash the summons and return and the writ, which motions were overruled; that Anita Williams informed the magistrate of her intention to file a petition for writ of prohibition; and that the magistrate entered judgment in the cause as follows, "Judgment for plaintiff by default; possession of chattels; time of judgment, 10:29 a. m."

The court concluded that the magistrate had jurisdiction over the property of relator and was empowered to enter a default judgment in favor of plaintiff Midwest for possession of chattels; that Anita Williams had the legal right to file her petition for writ of prohibition in circuit court, and that chapter 533, RSMo 1969, Missouri replevin statutes, is in all respects constitutional. The court then quashed the preliminary writ of prohibition theretofore entered and dismissed Anita Williams' petition for writ of prohibition.

Following an unavailing motion for new trial, relator-appellant Williams appealed from the judgment of the circuit court denying her petition for writ of prohibition.

In the instant case the constable executed that portion of the writ commonly

known as the order of delivery by seizing the chattels and delivering them to Midwest. This was the only official act that was performed by the constable. Respondent contends this act constituted service of process on relator-appellant.

Sec. 533.290, RSMo 1969, provides, "Process shall be issued and served in the same manner as provided for service of process in other civil cases before magistrates, and the order of delivery and summons may be in the following form: . . .."

Sec. 533.310, RSMo 1969, sets forth the manner by which the constable (officer) shall execute the writ of replevin. It states in part, "The officer shall execute the writ by taking the property therein mentioned, and delivering it to the plaintiff . . .."

Sec. 517.110, RSMo 1969, in pertinent part, provides: "Method of delivering summons.—Every summons issued by any magistrate, unless otherwise provided by law, shall be served at least ten days before the day of appearance therein mentioned and shall be executed . . . (1) By reading the same to the defendant; or (2) By delivering a copy thereof to the defendant; or (3) By leaving a copy of said summons at the usual place of abode of the defendant, with some person of the family above the age of fifteen years; provided, that in all cases where the defendant shall refuse to hear such writ read, or to receive a copy thereof, the offer of the officer to read the same, or to deliver a copy thereof, and such refusal, shall be a sufficient service of such writ; . . .."

Sec. 533.290, supra, requires that the process shall be served in the same manner as provided for service of process in other civil cases before magistrates and requires that a summons be part of the process in magistrate replevin actions. Sec. 517.110, supra, designates the method by which summons is to be served in magistrate court actions unless the procedure for service of the summons is otherwise pro-

vided for by law. Sec. 533.310, supra, sets forth the procedure to be employed by the officer (constable) in executing that portion of the writ requiring that the chattels be seized and delivered to the plaintiff— commonly called the order of delivery. There is no separate procedure found in the magistrate replevin statutes for service of summons. Consequently service of the summons must be made in accordance with § 517.110.

■ The execution of the order of delivery pursuant to § 533.310 does not, in and of itself, constitute service of the summons. It must be remembered that a suit in replevin looks to a judgment at some time after the suit is filed regardless of whether or not prejudgment possession of the chattels is obtained. The prejudgment possession portion of the replevin statutes is in aid of the principal suit—replevin— but is not the substantive suit itself. The judgment for a plaintiff in replevin vests the right to the possession of certain property in plaintiff and adjudicates that the defendant is not entitled to that possessory right.

In State ex rel. National Railways of Mexico v. Rutledge, 331 Mo. 1015, 56 S. W.2d 28, 37 (Mo.1932), this court said: " ' "Due process of law" requires that service of process shall always be made except when it may be, and is, waived. Only by appearance, or by service of process can a court obtain jurisdiction to adjudicate upon the rights of a defendant as involved in the action brought.' 50 C.J. p. 467. Absent a general appearance, or waiver of process, by the defendant, there must be service of process on defendant in some mode authorized by law or the court cannot proceed. The service of such process is always a prerequisite to jurisdiction over either the person or property of a defendant."

■ On the record in this case there has not been, as yet, any service of summons on Anita Williams in the replevin suit instituted in magistrate court. For

this reason the magistrate court did not have jurisdiction to enter a judgment for plaintiff, and the judgment the magistrate entered for Midwest is void for want of jurisdiction.

The action in circuit court was denominated prohibition. Technically the proceeding should have been mandamus as was the case in State ex rel. Hannon v. Crandall, 438 S.W.2d 297 (Mo.App.1969). The circuit court in the instant case found that relator-appellant informed the magistrate court of her intention to file a petition for prohibition and respondent (magistrate) entered a judgment for Midwest. The circuit court did not dispose of the proceeding on procedural grounds but rather entered its judgment on the merits holding that the magistrate did have jurisdiction to enter the judgment for Midwest; and this court, therefore, will also adjudicate the substantive issue of the validity of the magistrate court judgment.

The circuit court erred in holding that the execution of the order of delivery was sufficient to vest jurisdiction in the magistrate to enter a judgment for plaintiff Midwest. The judgment entered by the magistrate is void.

Relator-appellant also contends that the prejudgment possession provisions of the Missouri replevin statutes, chapter 533, are unconstitutional on their face and as applied to her, in that said provisions deprive a party defendant of property without prior notice and an opportunity to be heard in violation of the due process clauses of the U.S.Const., Amend. 14, and Mo.Const. Art. I, § 10.

■ In this case the clerk of the magistrate court, not the magistrate judge, issued the order of delivery, and the chattels then in relator-appellant's possession were seized by the constable without prior notice to appellant, without an opportunity to be heard, and without the establishment of the validity or the probable validity of the underlying claim against appellant.

In Fuentes v. Shevin, 407 U.S. at 96, 92 S.Ct. at 2002, the court said: "We do not question the power of a State to seize goods before a final judgment in order to protect the security interest of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication. Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. '[D]ue process is afforded only by the kinds of "notice" and "hearing" that are aimed at establishing the validity or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property . . . ..' Sniadach v. Family Finance Corp., *supra,* 395 U.S. [337] at 343, 89 S. Ct. [1820] at 1823 [23 L.Ed.2d 349] (Harlan, J., concurring). See Bell v. Burson, *supra,* 402 U.S. [535] at 540, 91 S.Ct. [1586] at 1589 [29 L.Ed.2d 90]; Goldberg v. Kelly, *supra,* 397 U.S. [254] at 267, 90 S.Ct. [1011] at 1020 [25 L.Ed.2d 287]."

Under *Fuentes* the relator-appellant here was deprived of the possession of property in violation of the due process clause of the U.S.Const., Amend. 14, and therefore she is entitled to be restored to possession of the chattels seized from her.

The foregoing is sufficient to decide this appeal and the court does not, by this decision, hold the prejudgment possession provisions of the Missouri replevin statutes to be facially unconstitutional. It is apparent, however, that a plaintiff who proceeds in replevin and obtains a prejudgment possession order of delivery without complying with the requirements of *Fuentes* will be proceeding under a void order.

■ It is also clear that the judge, not the clerk, must be the one who issues the order of delivery and before whom the

prejudgment possession hearing is held, on notice to the defendant, at which time the judge must make a finding of the probable validity of the plaintiff's underlying claim, before issuing the order of delivery. The foregoing is somewhat *ex gratia* and is stated because the court is of the opinion that, in view of the long tenure of the replevin statutes, the people ought not to be left without any judicial procedure whereby the lawful possession of personal property can be obtained pending legislative action in this field.

The court pretermits the question of whether or not the prejudgment possession provisions of the replevin statutes are in violation of the prohibitions of the U.S. Const., Amends. 4 and 14, against unreasonable search and seizure, as did the court in Fuentes v. Shevin, supra, at 96 n. 32, 92 S.Ct. 1983.

The judgment of the circuit court is reversed and the cause is remanded with instructions to the circuit court to direct the respondent magistrate judge to set aside and hold for naught the judgment entered on October 26, 1970, by respondent in favor of Midwest Furniture & Utilities, Inc., plaintiff in a certain cause entitled, Midwest Furniture & Utilities, Inc., plaintiff, vs. Anita Louise Williams, defendant, No. 59090, Magistrate Court, Fourth District, Jackson County, Missouri, and to direct respondent to enter the appropriate order restoring relator-appellant Anita Louise Williams to the possession of the chattels seized under the order of delivery issued August 10, 1970, and to set aside and hold for naught the said order of delivery.

FINCH, C. J., and DONNELLY, MORGAN and HOLMAN, JJ., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

HENLEY, J., dissents in separate dissenting opinion filed.

SEILER, Judge (concurring in result).

I concur in result, but do so on the basis that under Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the prejudgment possession portions of the replevin statutes of Missouri are unconstitutional.

In my opinion, we are bound by Fuentes v. Shevin. Its force as a final and binding decision of the Supreme Court of the United States is not lessened by its being handed down by seven justices instead of nine. As Justices Lockwood and Struckmeyer *point out in Roofing Wholesale Co., Inc. v.* Palmer, 108 Ariz. 508, 502 P.2d 1327, 1331–1332 (banc 1972), we cannot decide whether we will follow a United States Supreme Court decision on the basis of speculation as to how justices who did not participate would have voted if they had participated. If we are to be guided by speculation (and the majority opinion in the Arizona case says that if they believed the other two justices would make it a majority the next time around they would be willing to follow Fuentes now), we might as well speculate on what the outcome would be if the question were to be reexamined when new justices eventually replace present justices. The United States Supreme Court has never said that it takes a majority of five for its decision to be binding generally. As pointed out by Justice Struckmeyer, the Supreme Court has on many occasions decided important cases by a four man majority and if we were to take the position these cases do not constitute binding precedents, the "resulting mischief [would be] intolerable."

HENLEY, Judge (dissenting).

I agree with the principal opinion that because summons had not been served on the defendant in replevin (relator-appellant here) the magistrate was without jurisdiction to enter judgment against her and that the judgment is, therefore, void. I agree also that for this reason the judgment must be reversed and the cause re-

manded with directions that the magistrate be directed to set aside the judgment.

However, I do not agree that on the record presented the magistrate should be directed summarily to enter judgment immediately restoring possession of the property to the replevin defendant. To do so assumes that the security instrument or contract between the parties did not give (as we judicially know most do today) the mortgagee the power in event of default to sell the property at public or private sale with or without notice, or that the mortgagee did not exercise that power if it existed, and that mortgagee still has possession. I do not believe we can assume this to be fact. If the mortgagee does not have possession, our replevin statutes [1] provide a procedure which will protect the rights of the parties.

There is another reason I would not remand with the directions imposed by the principal opinion. In my opinion, those directions at least ignore rights of the creditor if they do not, in effect, destroy his security.

I would remand with directions (1) that the judgment for plaintiff in replevin be set aside, (2) that said plaintiff be afforded reasonable opportunity to secure service of summons on defendant, and (3) that further proceedings be had in accordance with the replevin statutes of this state.

I respectfully disagree with the majority opinion and agree with the minority in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556. But my disagreement with the majority in that case is of no consequence if it has the force of a declaration of law applicable to all like cases, because I am bound by the supreme law of the land (Article VI, par. 2, Constitution of the United States) as declared by the U.S. Supreme Court. The principal opinion relies in part upon *Fuentes,* thus indicating that that case is binding on this court. I am not satisfied that we are bound by it. *Fuentes* was decided by seven of the nine judges of that court, with only four, less than a majority of all judges constituting that court, joining in the decision, and three dissenting therefrom. Others have questioned whether the concurrence of less than a clear majority of all the legally constituted members of the court may do more than decide the case then at hand. The Supreme Court of Arizona recently declined to follow *Fuentes* in Roofing Wholesale Co., Inc. v. Palmer, 108 Ariz. 508, 502 P.2d 1327, at 1. c. 1331 (1972), saying: "We do not believe, however, that it is unreasonable to ask that before we are required to declare unconstitutional statutes enacted by our legislature with the resulting chaos to an important part of our commercial and contract law, that the United States Supreme Court speak with at least a majority voice on the subject." I agree fully with what was said by the Supreme Court of Arizona and the concurring opinion of its Chief Justice.

For the above reasons, I respectfully dissent.