524 P.2d 1066

**MASSEY–FERGUSON CREDIT CORPORATION, Plaintiff-Respondent,**

v.

**Arthur PETERSON, Defendant-Appellant.**

**No. 11340.**

Supreme Court of Idaho.

July 11, 1974.

May, May & Sudweeks, Jay D. Sudweeks, Twin Falls, for defendant-appellant.

Ling & Nielsen, Rupert, for plaintiff-respondent.

McFADDEN, Justice.

This appeal presents for consideration the constitutionality of the Idaho Claim and Delivery statute [1] within the purview of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Subsequent to the submission of this case to this court for consideration, the United States Supreme Court issued its opinion in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which directly bears on the issues in the instant appeal.

In September 1970, appellant Arthur Peterson purchased a Massey-Ferguson combine from Zitlau Motors on a retail installment contract. In November of the same year he purchased another Massey-Ferguson combine from the same distributor under a second retail installment contract and in June of 1971 appellant purchased a diesel tractor from the dealer also under a retail purchase contract. Zitlau Motors assigned its interests under these contracts to Massey-Ferguson Credit Corporation, the plaintiff-respondent. Financing statements concerning these contracts were duly filed in the Gooding County Recorder's office, pursuant to I.C. § 28–9–401(1).

After taking possession of the various items of equipment, Peterson used them in farming operations and in custom farm work. In December 1971 Peterson failed to make payments due under the contracts, and he and the respondent entered into a series of negotiations in an attempt to work out a satisfactory arrangement towards bringing the past due contracts into a satisfactory state. In July 1972 under one phase of the negotiations appellant allowed the respondent to take possession of the combine purchased in November 1971, which equipment remained in respondent's possession. However, negotiations did not bring the desired results and on August 4, 1972, the respondent corporation instituted the instant action under the provisions of I.C. § 8–306 et seq. The respondent filed its complaint alleging the execution of the retail installment contracts on the items of equipment by appellant, his taking delivery of the same, and his failure to make the payments as provided in the contracts.

In its complaint respondent sought to have the various items of personal property sold pursuant to the Uniform Commercial Code and to apply the proceeds to the balances due. The respondent also sought possession of the other two items of equipment still in possession of the appellant.

Respondent corporation also filed a bond as provided by I.C. § 8–304 and an affidavit for possession of the combine and tractor still in appellant's possession.[2] This affi-

---

1. Chapter 3 of Title 8 of the Idaho Code, as it existed prior to its amendment by S.L. 1973, Ch. 118.

2. I.C. § 8–301. "Delivery of personal property may be claimed.—The plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer, claim the delivery of such property to him as provided in this chapter."

    I.C. § 8–302. "Affidavit of claim.—Where a delivery is claimed, an affidavit must be made by the plaintiff, or by some one in his behalf, setting forth:

    1. That the plaintiff is the owner of the property claimed (particularly describing it), or is entitled to the possession thereof.

    2. That the property is wrongfully detained by the defendant.

    3. The alleged cause of the detention thereof, according to his best knowledge, information and belief.

4. That it has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution or an attachment against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

    5. The actual value of the property."

    I.C. § 8–303. "Requisition to sheriff.— The plaintiff or his attorney may, thereupon, by an endorsement in writing upon the affidavit, require the sheriff of the county where the property claimed may be, to take the same from the defendant."

    I.C. § 8–304. "Undertaking—Service of papers.—Upon a receipt of the affidavit and notice, with a written undertaking, executed by two or more sufficient sureties, approved by the sheriff, to the effect that they are bound to the defendant in double the value of the property as stated in the affidavit for the prosecution of the action, for the return of the property to the defendant, if return thereof be adjudged, and for the payment to

davit was addressed to the sheriffs of Gooding and Jerome Counties. The Gooding County sheriff went to appellant's farm, served appellant with a copy of the affidavit, undertaking and notice, and took possession of the diesel tractor. The Jerome County sheriff took possession of the combine on a farm where appellant was harvesting grain under contract. In each instance the respondent's agent, Moore, accompanied the sheriff.

On August 25, 1972, appellant filed his answer to the respondent's complaint, generally denying the allegations thereof, and also counterclaimed for the seizing by the sheriffs of the diesel tractor and the combine, seeking general and punitive damages and for costs of suit and attorneys' fees for the alleged wrongful seizure of the property.

Respondent filed a motion to dismiss the appellant's counterclaim, which motion was supported by an affidavit of Mr. Moore, the respondent's area finance manager. A second affidavit by Moore was filed and a counter-affidavit was filed by appellant, depositions of the appellant and Mr. Moore were taken and made a part of the record. The trial court treated respondent's motion to dismiss as a motion for summary judgment, and entered summary judgment dismissing appellant's counterclaim with prejudice. It is from this action by the trial court that this appeal was perfected.

It is the conclusion of this court that the trial court erred in granting respondent's motion for summary judgment and that judgment must be reversed and the cause remanded for the reasons hereinafter set out.

█ At the outset it is to be observed that from the record this court cannot determine the basis of the trial court's summary judgment of dismissal of appellant's counterclaim. However, in view of the state of the law at this juncture, it is clear that the provisions of the Idaho Claim and Delivery statute as it existed prior to the 1973 amendment fail to meet the procedural due process requirements of the Fourteenth Amendment of the United States Constitution. Fuentes v. Shevin, supra; Mitchell v. W. T. Grant Co., supra.

Under the provisions of the claim and delivery statute (I.C. Title 8, Ch. 3) prior to its amendment personal property could be seized without any prior judicial proceedings upon a plaintiff's affidavit and the posting of a bond, at the time of the filing of the complaint. I.C. § 8–301. A plaintiff or his attorney by simply endorsing the affidavit could require the sheriff to take the property described. I.C. § 8–303. The sheriff then was required to take into his custody the property described and retain it in his custody, serving a copy of the affidavit, notice, and undertaking upon the defendant or his agent. The statute provides for no prior notice whatsoever or any opportunity of a defendant to challenge the factual statements in the affidavit.

The only means by which a defendant could retain possession of the property was by giving the sheriff a proper written undertaking in an amount double the value of the property. In the absence of a re-delivery bond being furnished, the sheriff, upon payment of his fees and expenses had to deliver the property taken to the plaintiff pending final judgment in the underlying action. I.C. § 8–310.

In Fuentes v. Shevin, supra, the United States Supreme Court struck down a Florida replevin statute (as well as a Pennsylvania replevin statute in Parham v.

him of such sum as may from any cause be recovered against the plaintiff, the sheriff must forthwith take the property described in the affidavit, if it be in the possession of the defendant or his agent, and retain it in his custody. He must, without delay, serve on the defendant a copy of the affidavit, notice and undertaking, by delivering the same to

him personally, if he can be found, or to his agent from whose possession the property is taken; or, if neither can be found, by leaving them at the usual place of abode of either, with some person of suitable age and discretion; or, if neither have any known place of abode, by putting them in the nearest post office, directed to the defendant."

Cortese [407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556]) as working a deprivation of property without procedural due process of law. The vice in the statutes before the court in both the Fuentes case and the Parham case was that neither the Florida statute nor the Pennsylvania statute afforded the defendants any opportunity to be heard prior to the time their property was taken from their possession.

In the recent case of Mitchell v. W. T. Grant Co., supra, the United States Supreme Court affirmed the judgment of the Supreme Court of Louisiana which upheld the constitutionality of that state's sequestration statutes. The United States Supreme Court in the majority opinion distinguished Fuentes v. Shevin, and rejected the concept that under the circumstances in Mitchell v. W. T. Grant Co., the due process clause guaranteed the buyer's use and possession of the goods until all issues of the case were judicially resolved. That Court upheld the procedures of the Louisiana sequestration statute, which allows a mortgage or lienholder to obtain a writ of sequestration if "it is within the power of the defendant to conceal, dispose of, or waste the property," during the pendency of the repossession action. La.Code Civ. Pro. Art. 3571. The creditor must post bond sufficient to protect the vendee against all damages in the event the sequestration is improvident, and the creditor must by verified petition or affidavit show "specific facts" entitling him to the writ. La.Code Civ.Pro., Arts. 3501 and 3574. The writ was obtainable on the creditor's *ex parte* application without notice to the debtor or any opportunity being afforded for a hearing on the application. However, the statute did entitle the debtor immediately to seek dissolution of the writ,

which must be ordered unless the creditor "proves the grounds upon which the writ was issued." Art. 3506. The debtor may, with or without moving to dissolve the sequestration, regain possession of the property by "furnishing security for the satisfaction of any judgment which may be rendered against him." Art. 3507. Finally, in Orleans Parish where the case arose, the writ of sequestration could only be issued by a judge. Arts. 281, 282.[3]

Idaho's claim and delivery statute under which this appeal arises is similar to Florida's replevin statute in that it authorizes issuance of a writ of replevin upon an ex parte application by affidavit without any judicial participation, order or supervision. Indeed, the claim and delivery statute permits a secured installment seller, upon filing of a complaint and posting of a bond, to repossess the goods sold with *only* the assistance of the sheriff operating under the affidavit and bond issued by the interested creditor. It is noteworthy that the affidavit necessary under the claim and delivery statute requires only the most conclusionary claims by the affiant of his right to possession or ownership and the debtor's wrongful possession. In this case respondent's affidavit recited only the bare phraseology of the statute. The Court in Mitchell v. W. T. Grant Co., supra, found such conclusionary allegations particularly unsuited in ex parte applications for possession without judicial supervision:

> "The risk of wrongful use of the procedure must also be judged in the context of the issues which are to be determined at that proceeding. In Florida and Pennsylvania property was only to be replevied in accord with state policy if it had been 'wrongfully detained.' This broad 'fault' standard is inherently

3. Four members of the United States Supreme Court were of the opinion that the decision in Fuentes v. Shevin, supra, required a reversal of the judgment of the Supreme Court of Louisiana, which upheld the validity of that state's sequestration statutes. These four dissenting members were the members of the court which concurred in the majority opinion in Fuentes v. Shevin. One state court at least has determined that there was no clear majority opinion ever rendered in Fuentes v. Shevin, supra, inasmuch as only four members concurred in the majority opinion while three members dissented, two members of the court not participating. See, Roofing Wholesale Co., Inc. v. Palmer, 108 Ariz. 508, 502 P.2d 1327 (1972).

subject to factual determination and adversarial input. As in Bell v. Burson, *supra*, [402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90] where a driver's license was suspended without a prior hearing, when the suspension was premised on a fault standard, see Vlandis v. Kline, 412 U.S. 441, 446–447 [93 S.Ct. 2230, 2233–2234, 37 L.Ed.2d 63] (1973), *in Fuentes this fault standard for replevin was thought ill-suited for preliminary ex parte determination. In Louisiana, on the other hand, the facts relevant to obtaining a writ of sequestration are narrowly confined. As we have indicated, documentary proof is particularly suited for questions of the existence of a vendor's lien and the issue of default.* There is thus far less danger here that the seizure will be mistaken and a corresponding decrease in the utility of an adversary hearing which will be immediately available in any event." (Emphasis supplied.)[4] 416 U.S., at 616, 94 S.Ct., at 1904, 40 L.Ed.2d 419 (1974).

The Idaho claim and delivery statute also fails to provide for a hearing on the matter of possession following the execution of the affidavit. Under the claim and delivery statute which is similar to Florida's replevin statute a debtor eventually has an *opportunity for a hearing on only* the merits of the underlying action. The Court in Fuentes found this opportunity for a hearing after the property was taken an insufficient protection of the debtor's procedural due process rights to his possession of the goods and held that a full adversary hearing was required before termination of the debtor's possession. The Court in Mitchell, in contrast, found that the Louisiana sequestration statute which provided an opportunity for a hearing on his right to possession of the goods *after* sequestration a sufficient protection of the debtor's rights to procedural due process when considered with the statute's other requirements.

"Of course, as in *Fuentes,* consideration of the impact on the debtor remains. Under Louisiana procedure, however, the debtor, Mitchell, was not left in limbo to await a hearing that might or might not 'eventually' occur, as he was under the statutory schemes before the Court in *Fuentes. Louisiana law expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued.'* Art. 3506."[5] (Emphasis

---

4. "A writ of sequestration is available to a mortgage or lien holder *to forestall waste or alienation* of the property, but different from the Florida and Pennsylvania systems, bare, *conclusionary claims of ownership or lien will not suffice under the Louisiana statute.* Article 3501 authorizes the writ 'only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the *writ clearly appears from specific facts' shown by verified petition or* affidavit. Moreover, in the parish where this case arose, the requisite showing must be made to a *judge and judicial authorization obtained.* Mitchell was not at the unsupervised mercy of the creditor and court functionaries. The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the ex parte procedure will lead to a wrongful taking. It is buttressed by the provision that should the writ be dissolved there are 'damages for the wrongful issuance of a writ' and for attorneys' fees 'whether the writ is dis-

solved on motion or after trial on the merits.' Art. 3506." (Emphasis supplied.) 416 U.S. 616, 94 S.Ct. at 1904, 40 L.Ed.2d 419 (1974).

5. According to the Court in Mitchell the Louisiana sequestration statute rested on sound, justifiable policies of protecting the creditor's value in the goods from deterioration through the debtor's use and protection from the risk of the debtor's concealment or transfer of the goods. The latter point was especially important to the creditor in Louisiana since a transfer of the goods would defeat his vendor's lien and his right to the property. In this regard, the Court stated:
"The danger of destruction or alienation cannot be guarded against if notice and a hearing before seizure are supplied. The notice itself may furnish a warning to the debtor acting in bad faith." 94 S.Ct. at 1901.
In this case evidence indicated that the respondent was concerned of depreciation and devaluation of the machinery through appellant's extensive contract farming operations.

supplied.)  416 U.S. 616, 94 S.Ct. at 1904, 40 L.Ed.2d 406 (1974).

■ Respondent argues that the appellant, in spite of being deprived of an opportunity for a prior hearing, should have pursued injunctive relief rather than filing a counterclaim for damages for an alleged wrongful taking of the equipment. Respondent further argues that had the appellant sought injunctive relief appellant's procedural due process rights would have been safeguarded. The claim and delivery statute requires the creditor to secure a bond "in double the value of the property as stated in the affidavit for the prosecution of the action, for the return of the property to the defendant, if return thereof be adjudged, *and for the payment to him of such sum as may from any cause be recovered against the plaintiff* * * *."* I.C. § 8–304 (Emphasis supplied.)  We find nothing which precludes a debtor from filing a damage action for wrongful taking of property as filed by appellant in this case. More important, regardless of whether the appellant could have sought equitable relief in the form of an injunction, there is no provision for an injunction in the claim and delivery statute, and an application under I.R.C.P. 65 is addressed solely to the discretion of the court.

While the majority opinion in Mitchell v. W. T. Grant Co., supra, does not expressly overrule the Fuentes requirement of a full adversary hearing before seizure of property under replevin type statutes, the Court in Mitchell apparently discarded that requirement for a more flexible test of procedural fairness which creditors may more easily meet. Essentially, the Court in Mitchell found that the Louisiana sequestration statute passed constitutional muster because: (a) it authorized the issuance of a writ to forestall *waste or alienation* of property, (b) the grounds for the writ rested upon facts specifically stated in the affidavit or petition (i. e. documentation), (c) the issuance of the writ was judicially supervised, (d) the debtor had the opportunity for an immediate hearing after termination of possession in which the plaintiff had the burden of proving the facts in the petition, and, (e) the debtor could also regain possession by posting bond.

The failure of the Idaho statute to provide for judicial supervision of the issuance of the order, and the lack of any provision for a certain, immediate judicial hearing on the validity of the taking of the property are two defects in the laws of this state at the time this action was instituted. Mitchell v. W. T. Grant Co., supra. Therefore, it is our conclusion that former Idaho Code, Title 8, Chapter 3, denied the appellant procedural due process through the ex parte seizure of property by state action.

The summary judgment of dismissal is reversed and the cause remanded for further proceedings in conformity with this opinion. Costs to appellant.

DONALDSON, McQUADE and BAKES, JJ., concur.

SHEPARD, Chief Justice (dissenting).

I disagree with what I believe to be an overly narrow interpretation of the statutes of the State of Idaho by the majority herein. I do not agree that *Grant* requires the holding of the majority herein. I further disagree with the assertion of the majority that one must look solely to the statute under constitutional attack to determine if the vendee on a conditional sales contract has an available remedy which provides a hearing possibility.

Apparently, such intensive use produces considerable wear on the machines which decreases their value as security, to the creditor. Consequently, the creditor must receive installment payments on schedule in order to offset rapid devaluation of the equipment. It was for this reason that respondent refused to allow appellant to use the machinery during the harvest.