540 P.2d 156

**TURF IRRIGATION AND WATERWORKS SUPPLY, a division of Florida Company, an Arizona Corporation, Appellant,**

**v.**

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Trujon Construction and Development Company, an Arizona Corporation, Leland C. Vought, dba L. C. Vought Company, Johns-Manville Sales Corporation, a Delaware Corporation, Union Rock & Materials Corporation, an Arizona Corporation, and Employment Security Commission of Arizona, Appellees.**

**No. I CA-CIV 2575.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 16, 1975.

Mesch, Marquez & Rothschild, P. C., by Douglas H. Clark, Jr., Tucson, for appellant.

Streich, Lang, Weeks, Cardon & French, by Earl E. Weeks, Phoenix, for appellee Johns-Manville.

Davis & Eppstein, by Robert W. Eppstein, Tucson, for appellee L. C. Vought Co.

Fennemore, Craig, von Ammon & Udall, by Michael Preston Green, Phoenix, for appellee Mountain States Tel. and Tel. Co.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellee Union Rock & Materials Corp.

## OPINION

HAIRE, Chief Judge, Division 1.

The question presented on this appeal concerns the validity, as against appellant, of two prejudgment writs of garnishment, not involving wages, issued and served in 1971.

In March of 1971 appellees Vought and Johns-Manville (sometimes referred to as appellees) filed separate and independent actions against Trujon Construction and Development Company. In connection with these actions, writs of garnishment were issued and served upon Mountain States Telephone and Telegraph Company, which responded that it was indebted to Trujon in an amount which was eventually

determined to be in excess of $11,000. The Vought writ of garnishment was served on March 5, 1971, and the Johns-Manville writ was served on March 17, 1971. As previously indicated, both of these writs were issued and served prior to judgment in accordance with then applicable Arizona statutory provisions. *See* A.R.S. § 12–1571 et seq. Trujon, the debtor and principal defendant in the Vought and Johns-Manville actions, was duly served, but did not, and has not to this date, contested the validity of the above-mentioned writs of garnishment.

After the service of the Vought and Johns-Manville writs of garnishments on Mountain States, various other creditors of Trujon also asserted claims against the Trujon funds being held by Mountain States. Inasmuch as the total amount of these claims exceeded the amount which Mountain States owed to Trujon, Mountain States, on October 5, 1971, filed a declaratory judgment and interpleader action seeking court determination of the rights and priorities of the various claimants. This appeal grows out of the judgment entered in that action. The appellant, Turf Irrigation and Waterworks Supply Company, was made a party to the action because of its previously filed mechanic's and materialmen's lien.[1] Against this background we now consider subsequent events which gave rise to the questions on this appeal.

As previously stated, Mountain States filed its interpleader action on October 5, 1971. On October 26, appellant asserted a new claim against the Trujon funds being held by Mountain States, having on that date served upon Mountain States a postjudgment writ of garnishment. After the filing of motions for summary judgment by the various claimants, the trial court entered its judgment in the interpleader action, in effect finding that the claims of Vought and Johns-Manville based upon their prejudgment writs of garnishment

were prior and superior to the claim of appellant based upon its subsequently filed postjudgment writ.

The sole contention urged on appeal by appellant is that the Vought and Johns-Manville writs of garnishment were "void, invalid and of no force and effect" because of the alleged unconstitutionality of the Arizona statutes insofar as they authorized prejudgment garnishment without allowing the debtor a pregarnishment hearing as to the genuineness of plaintiff's claim. In this connection we note that prior to the filing of the prejudgment writs here involved, the United States Supreme Court had issued its opinion in *Sniadach v. Family Finance Corporation of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), on June 9, 1969, which brought into question the constituionality of state statutes allowing prejudgment garnishment of wages without notice and a prior hearing. After the *Sniadach* decision, but prior to the issuance of the writs of garnishment here involved, the Arizona Supreme Court issued its opinion in *Termplan, Inc. v. Superior Court of Maricopa County,* 105 Ariz. 270, 463 P.2d 68 (1969), upholding the constitutionality of the Arizona garnishment statutes insofar as concerns prejudgment writs of garnishment *not involving wages.* See also to the same effect, *Andrew Brown Company v. Painters Warehouse, Inc.,* 11 Ariz.App. 571, 466 P.2d 790 (1970); and *First National Bank and Trust Co. v. Pamona Machinery Co.,* 107 Ariz. 286, 486 P.2d 184 (1971) filed June 25, 1971, some three months after the service of the Vought and Johns-Manville writs of garnishment.

The motions for summary judgment which eventually resulted in the entry of the judgment here appealed were not filed until September 1972. By that time the United States Supreme Court had filed its decision in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (June 12,

---

1. This mechanic's and materialmen's lien was later determined to be invalid because not timely filed.

1972), and in addition, the United States District Court for the District of Arizona had filed its opinion in *Western Coach Corporation v. Shreve,* 344 F.Supp. 1136 (June 15, 1972), affd., 475 F.2d 754 (9th Cir. 1973). These decisions appeared to require that Arizona's garnishment statute be considered unconstitutional as to all prejudgment garnishments, the unconstitutionality not being limited merely to prejudgment wage garnishments as had been previously held by the above-cited Arizona appellate decisions. Nevertheless, on November 15, 1972, the Arizona Supreme Court filed its opinion in *Roofing Wholesale Co., Inc. v. Palmer,* 108 Ariz. 508, 502 P.2d 1327 (1972), again upholding the validity of Arizona's prejudgment garnishment statutes not involving wages.

The above discussion of 1972 and prior Arizona appellate decisions has not been set forth in order to show that Arizona's prejudgment garnishment statutes must, in 1975, be considered constitutional. Clearly at this point in time their unconstitutionality must now be accepted in view of the principles set forth in recent decisions issued by the United States and Arizona Supreme Courts. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Thornton v. Carson,* 111 Ariz. 490, 533 P.2d 657 (1975). Rather, the above discussion of Arizona appellate decisions is set forth to demonstrate that in 1971, at the time of the service of appellees' writs of garnishment, the Arizona appellate courts had expressly considered the question of the constitutionality of prejudgment writs of garnishment not involving wages and had held them to be constitutional.

In urging their motions for summary judgment in the trial court appellees advanced three arguments: first, that the Arizona statutes allowing prejudgment writs of judgment not involving wages were constitutional; second, that even if declared unconstitutional, a retroactive effect should not be given so as to invalidate appellees' writs of garnishment where Tru-jon, the debtor and principal defendant in the garnishment action did not contest the writ; and third (to some extent related to and inseparable from appellees' second argument), that in any event the appellant had no standing to contest the validity of the writs of garnishment, that due process right being personal to the debtor, Trujon.

On September 24, 1973, the trial court entered its final judgment in favor of appellees and against appellant. The record does not indicate which of appellees' arguments the trial court adopted. Notwithstanding appellant's prior knowledge of the three arguments advanced in the trial court by appellees, appellant's opening brief filed in this Court addressed itself only to the question of the constitutionality of prejudgment writs of garnishment under Arizona's statutory scheme. Although the opening brief did contain a general statement of the principle that " . . . if a first garnishment is so defective that it does not create a lien, a subsequent garnishment takes priority," there was no argument presented concerning appellees' retroactivity or lack of standing contentions. In their answering briefs appellees again raised the three arguments presented in the trial court. Rule 5(e), Rules of the Supreme Court, 17A A.R.S., expressly gives an appellant an opportunity to file a reply brief " . . . replying to questions either of law or fact raised by appellee's brief. . . ." However, appellant did not file a reply brief or cite to the Court any authority concerning the second or third arguments advanced by appellees.

■■■ The appellate courts of this state have many times held that where debatable issues are raised, the failure of an appellee to file an answering brief constitutes a confession of reversible error. *Barrett v. Hiney,* 94 Ariz. 133, 382 P.2d 240 (1963); *Liberty Mutual Insurance Company v. MacLeod,* 17 Ariz.App. 449, 498 P.2d 523 (1972); *Meinhard-Commercial Corporation v. Oxford Shops, Inc.,* 13 Ariz.App. 592, 480 P.2d 13 (1971). We know of no decision applying a similar principle to the

failure of an appellant to file a reply brief, so that such failure results in a presumption that the issues raised in the appellees' answering brief furnish an adequate basis for the trial court's decision. However, where, as here, appellant's opening brief failed to address itself to substantial and determinative issues clearly developed and defined in the trial court, and these issues are again brought forth in the appellees' answering brief filed in this Court, a failure by the appellant to file a reply brief leaves this Court without any assistance in analyzing and deciding the difficult issues upon which the trial court's decision could have been based and upon which appellant's hopes for reversal must depend. A brief oral argument without citation and development of pertinent authorities cannot compensate for appellant's failure to file a reply brief under such circumstances. While, in our opinion, the foregoing would constitute a sufficient basis for summary affirmance of the trial court's judgment, because of the general importance of the issues raised, we will comment on the merits.

▌ As we have previously stated, it is our opinion that the Arizona garnishment statutes are unconstitutional insofar as they purport to allow prejudgment garnishments without affording the debtor an opportunity for a pregarnishment hearing as to the genuineness of the plaintiff's claim. We recognize that there are certain circumstances under which such pregarnishment notice and hearing would not be required. However, Arizona's statutes were not drafted with these limitations in mind. *See North Georgia Finishing v. Di-Chem, Inc., supra; Thornton v. Carson, supra.* Nevertheless, we agree with appellees that this holding of unconstitutionality does not, in and of itself, affect the rights of the parties to this appeal. We are not faced with a situation where the debtor, after the writs were served and prior to judgment, came into court and asserted a claim that his property had been taken without due process, thereby violating his constitutional rights. Here appellant, one of many creditors of the defendant debtor, and long after the service of the writs, has now asserted in a completely separate and independent action a collateral attack on other creditors' previously vested rights, urging a due process defense belonging to the debtor and which the debtor itself did not see fit to urge.

▌ From our previous discussion of the status of Arizona law, it is clear that at the time of the service of appellees' writs of garnishment, appellees were justified in relying upon the constitutionality of Arizona's statutes allowing prejudgment writs of garnishment not involving wages. Their priority rights vested at that time. *American-First Title & Trust Company v. Ewing,* Okl., 403 P.2d 488 (1965). Our holding of unconstitutionality at this late date should not be given retroactive effect so as to interfere with these vested priority rights, particularly where the party now complaining of unconstitutionality is not the party whose constitutional rights were allegedly transgressed. In *Credit Service Company v. Linnerooth,* 290 Minn. 522, 187 N.W.2d 632 (1971), the facts showed that immediately upon the filing of the United States Supreme Court's decision in *Sniadach, supra,* a garnishee defendant released to its employee funds which it had been holding pursuant to a prejudgment writ of garnishment. The funds were released without any application by the defendant debtor and without court order. In subsequent proceedings, judgment was entered in favor of the creditor against the garnishee defendant, notwithstanding the admitted unconstitutionality of the garnishment statute involved. In affirming, the Minnesota Supreme Court noted that the debtor defendant had not raised the issue of unconstitutionality, but rather had defaulted and failed to file an answer in the principal action. Under these circumstances the court held that the rights of the garnishing creditor had become vested and that the garnishee-defendant could not now raise questions of unconstitutionality,

quoting with approval the United States Supreme Court's decision in *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), as follows:

"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing ·no duties, and hence affording no basis for the challenged decree [citations omitted]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. ˙The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects * * *. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all inclusive statement of a principle of absolute retroactive invalidity cannot be justified." 308 U.S. 374, 60 S.Ct. 318–19, 84 L.Ed. 332

This same approach concerning retroactivity has been adopted in Arizona where giving retroactive effect to the overruling of a prior administrative or court decision would result in hardship to parties justifiably relying on past interpretations or decisions. *Southern Pacific Company v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963). See also, annot. Retroactive or Prospective Overruling, 14 L.Ed. 992; An-

not. Overruling Decision—Application, 10 A.L.R.3d 1371.

 We therefore hold that the subsequent determination of unconstitutionality of the Arizona statutes allowing the issuance of prejudgment writs of garnishment do not render appellees' writs of garnishment invalid and of no force and effect. Since the debtor did not timely urge the defense of unconstitutionality, appellant has no standing to now raise that defense in an attempt to retroactively divest appellees of their vested priority status.

Affirmed.

JACOBSON, P. J., and EUBANK, J., concurring.